1  Michael D. Adams (State Bar No. 185835)
   madams@rutan.com
2  Meredith L. Williams (State Bar No. 292888)
   mwilliams@rutan.com
3  Sarah Van Buiten (State Bar No. 324665)
   svanbuiten@rutan.com
4  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
5  Irvine, CA  92612
   Telephone:  714-641-5100
6  Facsimile:  714-546-9035

7  Attorneys for Defendant
   COSTCO WHOLESALE CORPORATION

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 DECKERS OUTDOOR                 Case No. 2:25-cv-04174-MCS-AGR
   CORPORATION, a Delaware
12 Corporation,                    Judge:   The Hon. Mark C. Scarsi

13              Plaintiff,         **DEFENDANT COSTCO
                                   WHOLESALE CORPORATION'S
14      vs.                        NOTICE OF MOTION AND
                                   MOTION TO DISMISS PLAINTIFF'S
15 COSTCO WHOLESALE                COMPLAINT PURSUANT TO FED.
   CORPORATION, a Washington       R. CIV. P. 12(b)(6)**
16 Corporation; and DOES 1-10, inclusive,

17              Defendant.         [*Filed concurrently with Declaration of
                                   Meredith Williams, Request for Judicial
18                                 Notice, and [Proposed] Order*]

19
                                   Hearing:
20                                 Date:    July 28, 2025
                                   Time:    9:00 a.m.
21                                 Ctrm:    7C

22                                 Date Action Filed:  May 9, 2025
                                   Trial Date:  Not set
23

24 / / /

25 / / /

26 / / /

27 / / /

28

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, July 28, 2025 at 9:00 a.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable Mark C. Scarsi located in the First Street Courthouse, 350 W. 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California 90012, Defendant Costco Wholesale Corporation ("Costco") will and does hereby move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) for an order dismissing:

1.  Claims I and II (i.e. the federal and state trade dress infringement claims) of Plaintiff Deckers Outdoor Corporation's Complaint against Costco, based on the Complaint's failure to plausibly allege secondary meaning;

2.  Claims III and IV (i.e. the unfair competition claims) as derivative of Claims I and II, and therefore insufficiently alleged for the same reason; and

3.  the allegation of entitlement to attorney's fees in ¶ 50 of the Complaint, i.e. in connection with Claim IV (common law unfair competition), as California's Unfair Competition Law only allows for injunctive and restitutionary relief, not attorney's fees, and Plaintiff provides no other basis to recover attorney fees for this claim as a matter of law.

This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum and Points and Authorities, and Request for Judicial Notice, all of the pleadings, files, and records in this proceeding, all other matters which the Court may take judicial notice, and any argument and evidence that may be presented to the Court by Costco or may be considered by the Court prior to making its ruling.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 23, 2025. (*See* Declaration of Meredith Williams, ¶ 2.)

Rutan & Tucker, LLP
attorneys at law

2835/033814-0002
22381735.2 a07/02/25

-2-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS

1   Dated: July 2, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
MEREDITH L. WILLIAM

By: _____ */s/ Meredith L. Williams* _____
        Meredith L. Williams
        Attorneys for Defendant
        COSTCO WHOLESALE
        CORPORATION

## I.    **INTRODUCTION**

On May 9, 2025, Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") filed a Complaint against Defendant Costco Wholesale Corporation ("Defendant" or "Costco") alleging claims for (1) trade dress infringement under the Lanham Act, (2) trade dress infringement under California common law, (3) unfair competition in violation of California Business & Professions Code § 17200 *et seq.* (the "UCL"),  and (4) unfair competition under California common law.

All of Plaintiff's claims are based on the unregistered trade dress of a particular shoe, specifically, Deckers' Tasman shoe sold under the UGG® brand.  However, Plaintiff's allegations focus on recognition of the UGG® brand—which is not alleged to be infringed by Costco's shoes sold under the Kirkland Signature® brand.  (*See* Compl., ¶19.)  Meanwhile, the allegations about the claimed Tasman trade dress are kept vague, i.e. that Deckers: (1) has sold this shoe for "more than 20 years" (*id.*, ¶23) and sold "millions of dollars' worth" in that time (*id.*, ¶¶12, 28), which—with a price of $100-$110 each—could mean under 1,000 pairs per year; (2) has not had exclusive sales, as "others, including but not limited to Defendant," have sold similar shoes (*id.* ¶14); (3) makes several conclusory allegations that Deckers has reused in complaints for ten different shoes across three brands, i.e. the Shoe (a) has had "long use, extensive sales, and significant advertising and promotion," and so "has achieved a high degree of recognition, widespread acceptance, and secondary meaning …" (*id.* ¶13); (b) is "one of the most well-recognized and commercially successful styles of [X] brand," (c) has been advertised and received "a large volume of unsolicited media attention, for example, through various celebrities seen wearing [Shoe] and graced the pages of many popular magazines nationwide and internationally," and (d) has "achieved widespread acceptance and recognition among the consuming public and trade throughout the United States."  (*Id.* ¶¶26-28; *see* Request for Judicial Notice ["RJN"], ¶¶11-15, Exs. 11-15 [summarizing boilerplate allegations that Deckers has used for ten different shoes, seven UGG® brand and three shoes in two other brands].)

Even taking these allegations at face value, Deckers merely alleges that it sold under a thousand pairs of shoes for under $100,000 per year for twenty years, advertised this shoe along with others under the UGG® brand (without any allegation that this was "look-for" advertising featuring its claimed trade dress), and that perhaps two celebrities were seen wearing the UGG® Tasman. Such minimal sales and vague allegations as to unsolicited media attention do not begin to approach a plausible allegation of secondary meaning, i.e. the requisite mental association by a substantial segment of consumers and potential customers between the alleged trade dress and Plaintiff. Moreover, far more extensive sales would not suffice to establish secondary meaning where, as here, Plaintiff's allegations underscore both that its sales have not been exclusive and that consumers buy these shoes because of the UGG® brand that appears prominently on them, not any claimed trade dress.

Notably, Plaintiff attempts to tie the *specific claimed* Tasman trade dress to the UGG® brand's *general* popularity. This is not logically sound, as Oprah's declaring that she loved another UGG® boot back in 2000 does not indicate that consumers recognize the trade dress of a different shoe introduced years later. Instead, Plaintiff must allege secondary meaning as to the actual product on which its claim is based, which Plaintiff fails to do. Indeed, Plaintiff attempts to hide the lack of allegations specific to the shoe at issue by referring broadly to the "UGG® brand" and "UGG® footwear, including the UGG® Tasman." This oblique phrasing avoids stating facts about the shoe at-issue, presumably because no facts exist to plausibly support secondary meaning for this shoe. Plaintiff's scant allegations specific to the shoe at-issue fail to state sufficient factual matter to make its bare legal conclusion of secondary meaning plausible. Plaintiff's first two claims for trade dress infringement thus fail to satisfy the minimum pleading standard and must be dismissed.

In turn, Plaintiff's statutory and common law unfair competition claims must be dismissed because they are derivative of Plaintiff's failed trade dress infringement claims. Further, Plaintiff's request for attorney's fees in connection with its common

Rutan & Tucker, LLP
attorneys at law

2835/033814-0002
22381735.2 a07/02/25

-2-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS

law unfair competition claim must be dismissed without leave to amend, because California law does not authorize such fees under the UCL and Plaintiff provides no other basis for those fees.

At best, the Complaint consists of little more than a cobbled-together string of conclusory allegations, vague references, and errant mischaracterizations—bereft of the facts and details necessary to withstand a motion to dismiss. Plaintiff's bare-bones allegations as to its unregistered product trade dress—which has admittedly been used by several "others" and only ever been used by Plaintiff with its UGG® brand—must be rejected in view of the Supreme Court's concern with "anticompetitive" trade dress lawsuits harming consumer interests in "the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves[.]" *Wal-Mart Stores, Inc. v. Samara Bros., Inc*., 529 U.S. 205, 213 (2000). Consumers who want to buy UGG® brand shoes do so based on that brand—not any claimed trade dress—while consumers who want to buy Kirkland Signature® brand shoes (and typically must be Costco members to do so) want the shoes' "utilitarian and esthetic" benefits and are not confused about source. Per the Supreme Court, the courts must protect consumer choice and stop anticompetitive lawsuits with deficient trade dress claims from harming consumers. As Plaintiff fails to state facts sufficient to support its claims, Defendant respectfully requests that the Court dismiss these defective claims and allegations in the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

## II.    RELEVANT ALLEGATIONS IN THE COMPLAINT

According to the Complaint, Plaintiff is engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975. (Compl., ¶8.) Plaintiff alleges its UGG® brand is "one of the most well-recognized premium comfort-leisure shoe brands in the United States." (*Id.*, ¶9.) Plaintiff alleges that "UGG® boots" (not the Tasman) were featured on Oprah's television show in 2000, and since then, the "popularity of UGG® footwear has grown exponentially" and various celebrities are "regularly seen wearing UGG® footwear." (*Id.*, ¶10.)

The Complaint does not allege when the Tasman was introduced, or any details about sales of that shoe, except that it has been sold "[f]or more than 20 years" and that Deckers has "sold millions of dollars of the UGG® Tasman" in that time.  (*Id.*, ¶¶23, 28.)  Deckers also alleges—in a word-for-word, boilerplate allegation it has used for at least ten other shoes with unregistered trade dress, of which seven are UGG® brand, one HOKA®, and two Teva® (*see* RJN, ¶¶11-15, Exs. 11-15)—that the UGG® Tasman "is one of the most well-recognized and commercially successful styles of UGG® [or HOKA®, or Teva®] brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications." (Compl., ¶26.)  The Complaint does not specify how many ads/promotions have featured this shoe, nor assert that any of these promotions incorporated "look-for" advertising that featured the alleged trade dress.  The Complaint also does not number or name any particular publications.

Deckers further alleges, here of the UGG® Tasman and elsewhere of six other UGG® shoes and three shoes under two of Deckers' other brands, that the given shoe "has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the [Shoe] and graced the pages of many popular magazines nationwide and internationally." (*Id.*)  This allegation is more boilerplate that Deckers has repeated in other complaints dealing with other UGG® shoes and even different brands, as are the later allegations of "millions of dollars [spent] annually on advertising UGG® [or HOKA®, or Teva®] products" and of selling "millions of dollars' worth of" the shoe at issue.  (*Compare id.*, ¶¶26-28 *with* RJN Ex. 11 at ¶¶26-28 [(1) UGG® Classic Ultra Mini], ¶¶39-41 [(2) UGG® Tazz], and ¶¶52-54 [(3) UGG® Tasman]; Ex. 12 at ¶¶23-25 [(4) UGG® Fluff Yeah Slides]; Ex. 13 at ¶¶40-42 [(5) UGG® Bailey Button]; Ex. 14 at ¶¶48-50 [(6) UGG® Oh Yeah slide], ¶¶61-63 [(7) HOKA® Ora Recovery Slides], ¶¶74-76 [(8) Teva® Hurricane Drift sandals], and ¶¶87-89 [(9) The Teva® Original Universal Sandal]; and Ex. 15 at ¶¶27-29 [(10) UGG® Neumel boots].)

The Complaint does not specify or quantify "a large volume" of media attention, nor does it number or name any particular magazines, which must differ across the ten different shoes for which Deckers recycled these three same paragraphs. (*Id.*.)  For this Complaint, an earlier allegation refers to three specific celebrities (*see* Compl., ¶10), but does not specify whether each was seen wearing the Tasman, as opposed to some other "UGG® footwear."  (*Id.*)  Likewise, the Complaint alleges that Plaintiff "spends millions of dollars annually on advertising of UGG® products, including … the Tasman," (*id.*, ¶27), but does not specify any amount spent to advertise that shoe, in particular, let alone any expenditures advertising the Tasman's specific features.  Plaintiff then alleges that it "has sold millions of dollars' worth of UGG® Tasman boots" since their introduction "more than 20 years" ago.  (*Id.*, ¶¶12, 23, 28.)  Again, Plaintiff has repeated the allegations as to "millions of dollars [spent] annually on advertising UGG® [or HOKA®, or Teva®] products" and sale of "millions of dollars' worth of" the shoe at issue for at least ten different shoes. (*Compare id.*, ¶¶26-28 *with* RJN Exs. 11-15.)

The Complaint alleges that Costco's sale of a shoe under the Kirkland Signature® brand, referred to as the "Kirkland Signature® brand 'Kirkland Signature Unisex Shearling Slipper'" (the "Accused Kirkland Signature® Product"), infringes Plaintiff's claimed "Tasman Trade Dress" (hereinafter, "Claimed Tasman Trade Dress").  (Compl., ¶¶15-19.)  The Complaint further alleges that Costco sells the Accused Kirkland Signature® Product "through its brick and mortar retail stores located nationwide" and "its website (www.costco.com)," (*id.* ¶16), omitting the undisputed facts that access to Costco's retail stores requires a Costco membership, while online sales require creating a Costco account.

## III.  **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550

U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV-15-769-PSG(SSX), 2015 WL 12731929, at *2 (C.D. Cal. May 8, 2015). Such "bald legal conclusions are not entitled to be accepted as true." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). Where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

## IV.  ARGUMENT

### A.  Plaintiff Fails To State Trade Dress Infringement Claims (I and II) for the Unregistered Tasman Trade Dress It Asserts.

The Complaint asserts federal trade dress infringement under the Lanham Act and trade dress claims under California common law, which are subject to the same analysis. *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *3 (citing, *inter alia, Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004)). "A plaintiff seeking to recover for trade dress infringement under section 43(a) must show that its trade dress is protectable …." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). Because Plaintiff has no registered trade dress, it must meet the test that the Ninth Circuit has laid out for unregistered trade dress claims.

Specifically, "[t]o prove infringement of an unregistered trade dress, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018); *see also Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993); *Kendall-Jackson Winery Ltd. v. E & J*

*Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998).

Here, the Complaint fails on at least[1] the second element:  Plaintiff fails to plead facts showing the Claimed Tasman Trade Dress has acquired secondary meaning.

### 1. <u>Plaintiff Fails To Plead Secondary Meaning for the Claimed Tasman Trade Dress.</u>

Plaintiff fails to state claims for trade dress infringement because it fails to plead facts indicating that the Claimed Tasman Trade Dress (as opposed to the original UGG® boot or any other UGG® shoe) has acquired secondary meaning. Since secondary meaning is an essential element of trade dress infringement under the Lanham Act and California common law, Claims I and II must be dismissed.

A plaintiff asserting infringement of unregistered product design trade dress under Lanham Act §43(a) must always prove that the design has acquired secondary meaning in the marketplace. 1 *McCarthy on Trademarks and Unfair Competition* § 8:8 (4th ed.), *citing Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216 (2000) ("*Samara Bros.*").  While the Complaint refers to the trade dress as "inherently distinctive" (Compl., ¶23), product design trade dress can never be "inherently distinctive," and instead requires "a showing of secondary meaning" to be protected. *Samara Bros.*, 529 U.S. at 215-16.  This is because "[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by … [allowing] suit against new entrants based upon alleged inherent distinctiveness." *Id.* at 213.  In other words, "given the unlikelihood of inherently source-identifying design, … allowing suit based upon alleged inherent distinctiveness" is not worthwhile, especially "since the producer can ordinarily obtain protection for a design … by securing a design patent or a copyright," protections that alleviate any potential harm from the requirement of "a showing of secondary meaning" for product design trade dress. *Id.* at 214.

---

[1]  Costco also disputes both non-functionality and likelihood of confusion, but recognizes the low pleading bar for alleging both and thus focuses this motion to dismiss on secondary meaning, where the pleading defects are most egregious.

Rutan & Tucker, LLP
attorneys at law

2835/033814-0002
22381735.2 a07/02/25

-7-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS

Secondary meaning is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Secondary meaning is a "term of art for identification of source." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d at 1262 (9th Cir. 2001). Trade dress attains secondary meaning "when the purchasing public associates the dress with a particular source." *Fuddruckers,* 826 F.2d at 843. Secondary meaning thus requires a showing that there is a "mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002).

A non-exhaustive list of factors considered in determining whether secondary meaning has been achieved includes: (1) direct consumer testimony; (2) survey evidence; (3) exclusivity, manner, and length of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; (7) actual confusion; and (8) proof of intentional copying by the defendant. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999). "The courts examine various factors to assess if a 'learned association' exists between the source and the appearance of the product." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1151 (C.D. Cal. 2009) (internal quotations omitted).

This case is analogous to *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929. In that case, the court concluded Deckers had failed to adequately plead secondary meaning because (among other issues) Plaintiff pled in a "conclusory" manner, without pleading facts specific to the shoe at issue on any of the above-listed factors for secondary meaning:

> While Plaintiff mentions the existence of some of these factors generally, **the allegations implicating public exposure, sales and establishment in the market, and intentional copying are conclusorily pled**. *See Compl.* ¶¶ 23-25. **Plaintiff states generally: the Bailey Button Boot Trade Dress is one of its "most well recognized and commercially successful styles;"** Plaintiff has spent "substantial time, effort and

money" promoting and advertising items embodying the trade dress; the trade dress has been in "long use" by Plaintiff; and Plaintiff has made "extensive sales" and sold "a substantial amount" of boots bearing the design. [] **The allegations of intentional copying are also conclusory.** *See Compl.* ¶¶ 16, 46 … In its current form, the complaint does not sufficiently allege that the Bailey Button Boot Trade Dress has acquired a secondary meaning.

*Id.*, at *5 [emphasis added]. Hence, such general and conclusory allegations as to secondary meaning are insufficient to survive a motion to dismiss.

After the court granted leave for Deckers to amend its "conclusorily pled" complaint in *Fortune* (*id.*, at *5-*6), Deckers amended to add an allegation that the trade dress at issue "serves to identify Deckers as the source of footwear featuring said trade dress[,]" and defendant moved to dismiss that amended complaint. (*See* RJN, Ex. 9 [Mot. to Dismiss FAC filed in *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* No. CV-15-769-PSG(SSX), Dkt. 25-1], at pp. 7-9 ["FAC Still Fails to Plead Facts Establishing That the Claimed Design Has Acquired Secondary Meaning,"], 8:27-28.) While the case ended before the court ruled on that further motion to dismiss (RJN, Ex. 10), defendant's motion logically would be granted on the same basis, i.e. that Deckers had provided only "conclusory" allegations as to secondary meaning.

Likewise, in the present case, Plaintiff does not plead facts plausibly indicating that its asserted trade dress has secondary meaning. Instead, Plaintiff simply asserts the legal conclusion that the claimed design has achieved a "high degree of consumer recognition and secondary meaning," without facts to support such a conclusion. (Compl., ¶25.) That conclusory allegation, by itself, is not enough to survive a motion to dismiss. *See, e.g.*, *Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, No. EDCV191700DMGGJSX, 2020 WL 7380148, at *14 (C.D. Cal. Sept. 22, 2020) ("general allegations of secondary meaning … are inadequate") (citing *inter alia Kittrich Corp. v. United Indus. Corp*., No. CV-17-06211-DDP(PLAx), 2017 WL 10434389, at *6 (C.D. Cal. Oct. 18, 2017) (dismissing trade dress claim where

Plaintiff's conclusory allegations of secondary meaning did not "allege[] concrete facts [] to support any of these assertions."); *see also Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV1701856CJCJDEX, 2018 WL 4940825, at *5 (C.D. Cal. May 3, 2018) (dismissing trade dress claim because "allegations lack[ed] specificity about the breadth or temporal span of its advertising, the amount spent on advertising, or examples of customer recognition"); *id.* ("[C]onclusory allegations about the existence of marketing efforts and intentional copying do not sufficiently allege that a trade dress has acquired a secondary meaning.") (citing *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, *supra*; *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) ("Evidence of use and advertising over a *substantial* period of time is enough to establish secondary meaning.") (emphasis added)).

"[T]o establish secondary meaning, [Plaintiff] must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1033 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). Plaintiff has not done so, as Deckers has not alleged facts supporting that the public places "primary significance" of the shoe's alleged features on the source of the claimed trade dress, and not the shoes themselves. Of particular note, "sales and advertising volume are only two of the factors courts consider, and such data, without more, fails to clearly demonstrate a secondary meaning." *See Audio-Technica Corp. v. Music Tribe Commercial My Sdn. Bhd.*, No. 2:21-cv-09009-ODW(ASx), 2022 WL 1423223, at *4 (C. D. Cal., 2022) (denying preliminary injunction) (noting that "high sales volume, on its own, means little in the distinctiveness analysis; a manufacturer might generate $100 million in annual revenue selling plain white t-shirts, but selling a large number of plain white t-shirts does nothing to make them any more distinctive"). And while "mere volume" is not enough to establish secondary meaning, Plaintiff here fails even to specify the volume

of products sold, failing to plausibly allege secondary meaning.

Contrary to Plaintiff's boilerplate secondary meaning allegations on the Tasman (which, again, are identical to its allegations for at least nine other shoes, of which six are other UGG® brand shoes) and focus on the UGG® brand consumers actually recognize, plaintiffs in other cases have alleged secondary meaning based on specifying their exclusive sales over decades and extensive sales and advertising expenditures for the trade dress and product at issue. *See, e.g.*, *adidas Am., Inc.*, 890 F.3d at 754 ("adidas has used the Stan Smith trade dress exclusively since the early 1970s" and "expended considerable capital and human resources to promote the shoe," which in 2014 became its "top selling shoe of all time with the 40 millionth pair sold"); *see also id.*, at 752 ("adidas claims to earn several hundred million dollars in annual domestic sales of products bearing the Three–Stripe mark."). Yet here, Deckers does not specify how many pairs it has sold in "more than 20 years" (Compl., ¶23), rendering its allegation that it has sold "millions of dollars' worth" of this shoe equivalent to selling under 1,000 pairs per year at the shoes' $100-110 price point. (*Id.*, ¶¶12, 28.)

This unspecified, meager sales volume renders it highly doubtful that a shoe could attain secondary meaning, even over two decades, and it would take significant look-for advertising focused on the at-issue trade dress to make such a claim. Plaintiff implicitly acknowledges it lacks such facts by keeping its advertising allegations vague and at the brand-level (i.e. stating only that "Deckers spends millions of dollars annually on advertising of UGG® products," *id.*, ¶27) and seeking to tie the Claimed Tasman Trade Dress to the fame of the original UGG® boot and Deckers' overall "UGG® Brand." (*Cf. id.* ¶¶8-14.) But even if being featured on Oprah's show were enough to establish secondary meaning (as noted below, it is not, per the United States Patent and Trademark Office ["USPTO"]), the "UGG® boots … featured on Oprah's" show in 2000 are not the Tasman introduced years later. (*Cf. id.*, ¶10.)

Even the original UGG® boot, Deckers' best known shoe, most likely lacks

secondary meaning.  When Deckers applied to register that boot's trade dress, the USPTO rejected both of Deckers' two applications as "without sufficient proof of acquired distinctiveness."  (RJN, Exs. 5 [Office Action dated June 18, 2015] at p. 3 & 7 [Office Action dated May 24, 2017] at p. 3.)  Indeed, the USPTO twice rejected Deckers' trade dress claim for its original UGG® boot, finding that its shoe design lacked acquired distinctiveness (i.e. secondary meaning) even after decades of sales. (*Id.*)  The USPTO specifically rejected Deckers' advertising evidence, including the appearance of UGG® boots on Oprah's Favorite Things® show (noted in the Complaint at ¶10), as showing only "consumer recognition of the word mark 'UGG'" and "not probative of whether consumers associate the specific design … with a single source."  (*Id.*, Ex. 7 at p. 5.)  This issue identified by the USPTO—i.e. Deckers showing at most recognition of the UGG® trademark, not any claimed trade dress—plagues this pleading as well, given that the Complaint's only images presented for the Tasman trade dress prominently display the UGG® brand that serves as the clear indicator of source (Compl., ¶¶19, 24):

**UGG® Tasman**



Rutan & Tucker, LLP
*attorneys at law*

2835/033814-0002
22381735.2 a07/02/25

-12-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS



Both USPTO Office Actions rejecting Deckers' trade dress claim for the original UGG® boot also provided extensive evidence that "many reputable retailers are selling boots with design elements substantially similar to that of the applicant," such that Deckers' "arguments as to exclusivity of use are not persuasive." (RJN, Ex. 5 at p. 4 and "attached internet evidence"; *see also id.* Ex. 7 at pp. 5-6 [citing extensive evidence of third party uses of similar designs before concluding at p. 6 that Deckers' "claim of *substantially* continuous and *exclusive* use is severely undercut by the use of a similar design and design features by third parties."] [emphasis in original].) Deckers ultimately abandoned both of these applications, and so was never able to put forward sufficient evidence of secondary meaning (or exclusivity) to secure federal registration of its original UGG® boot trade dress. (*Id.*, Exs. 6, 8.)

Here, similarly, Deckers has not put forward sufficient factual allegations as to any allegedly substantial, exclusive,[2] and continuous use of the asserted trade dress to

---

[2]  Notably, Deckers has not actually alleged that its use of the collective features asserted as part of the Claimed Tasman Trade Dress has been "exclusive," as is required for trade dress protection.  On the contrary, Plaintiff merely alleges that a "high degree of consumer recognition and secondary meaning … serves to identify Deckers as the exclusive source of footwear featuring said trade dress" (Compl., ¶28), while also alleging that "others, including but not limited to Defendant" have sold a similar shoe.  (*Id.*, ¶14.)  Deckers' secondary meaning allegation is circular and unsupported by any facts or allegation as to exclusive use.  Presumably it would be difficult for Deckers to claim "substantially continuous and exclusive use" per 15 U.S.C. § 1052(f) for the Tasman trade dress because—as the USPTO determined with respect to the original UGG® boot—such a claim "is severely undercut by the use of a similar design and design features by third parties."  (RJN, Ex. 7 at p. 6.)  In any event, the Complaint lacks any clear allegation that Deckers' use has been exclusive.

support its bald assertion of secondary meaning. On the contrary, Deckers has undercut its bare legal conclusion to that effect by admitting that the Claimed Tasman Trade Dress has been used by "others, including but not limited to Defendant." (Compl., ¶14.) Plaintiff's other allegations about the original UGG® boot do not make it more plausible that consumers seeing a different shoe immediately think of Deckers or the UGG® brand. Stated otherwise, Plaintiff's allegations as to other "UGG® footwear" since the "UGG® brand was founded" in 1979 simply do not add sales to or specify advertising for the Tasman shoe, nor sufficient facts rendering Deckers' assertion of recognition of the Claimed Tasman Trade Dress plausible.

Deckers' conclusory allegation of intentional copying underscores its failure to allege exclusivity, but falls legally short of plausibly alleging secondary meaning. Specifically, Deckers alleges that "others, including but not limited to Defendant, hav[ing] deliberately copied the UGG® Tasman," and this somehow "demonstrates secondary meaning in the marketplace." (Compl., ¶14.) That is legally incorrect, as Deckers should be aware, having lost on this issue on summary judgment a few months before filing the instant complaint. *See Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.*, No. 2:20-cv-09521-FLA(Ex), 2024 WL 2208099, at *10 (C.D. Cal. 2024) (Deckers cited several cases to argue that "deliberate and close copying of Deckers' trade dress, alone, is sufficient to establish secondary meaning in the Plaintiff's trade dress"; however, those cases "involved trade dress claims based on packaging—not product design" and were decided long before relevant Ninth Circuit and Supreme Court opinions). After rejecting Deckers' cases based on packaging trade dress, the court in that case went on to set forth the relevant standard for when evidence of copying may be used to support secondary meaning, as follows, *id.* (citation and spacing added):

> Since Plaintiff's cited cases were decided, both the Supreme Court and Ninth Circuit have recognized that product design serves purposes other than source identification and is entitled to less protection than packaging. *Samara Bros.*, 529 U.S. at 212–13 (holding product design, unlike packaging, is not inherently distinctive and that "[c]onsumers are

aware of the reality that, almost invariably, even the most unusual of product designs ... is intended not to identify the source, but to render the product itself more useful or more appealing"); [*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001),] at 29 ("[C]opying is not always discouraged or disfavored by the laws which preserve our competitive economy.").

As the Supreme Court recognized in *Samara Bros.*, 529 U.S. at 213, a "[c]onsumer should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves" through abuse of trade dress law. Accordingly, evidence of copying is relevant only if probative of an accused infringer's efforts to poach its competitor's superior reputation, rather than to copy a superior or more aesthetically appealing design.

Hence, at least one court in this District has implemented the Supreme Court's concern with "anticompetitive" trade dress lawsuits—in a case in which Deckers was trying to over-extend its claimed product design trade dress rights—by requiring not just copying, but copying directed "to poach its competitor's superior reputation," while "copy[ing] a superior or more aesthetically appealing design" does not establish secondary meaning. *Cf. id.* Nevertheless, Deckers frames its single, vague copying allegation in this case more generally, stating only that Costco and others "deliberately copied the UGG® Tasman" (Compl., ¶14). Because that allegation is merely that Costco and others copied a design, which is consistent with permissible copying and involves no allegation that Costco sought to take advantage of Deckers' reputation, it is insufficient to show secondary meaning.

Moreover, Deckers had the opportunity to plead the favorable results of any relevant consumer surveys it has undertaken in the last two decades to support its claim to secondary meaning; that this serial plaintiff has now filed at least thirteen lawsuits as to the Tasman (and over 70 unregistered trade dress lawsuits total) without alleging a favorable consumer survey, i.e. the "canonic way of demonstrating secondary meaning" (*Audio-Technica Corp.*, 2022 WL 1423223, at *3–5 (citing *Levi Strauss & Co.*, 778 F.2d at 1358 ("An expert survey of purchasers can provide the most persuasive evidence on secondary meaning."))), supports "an inference that the

results of such a survey would be unfavorable." (*Id.* (quoting *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998); *Allstate Ins. Co. v. Kia Motors Am., Inc.*, No. CV-16–6108-SJO(AGRx), 2017 WL 6550669, at *15 (C.D. Cal. Dec. 22, 2017)).

At most, Plaintiff alleges that it "has sold millions of dollars' worth of UGG® Tasman" over the last 20 years or so. (Compl., ¶¶23, 28.)  However, if Plaintiff considers two million dollars to be "millions of dollars," at the advertised retail price of $100-110 per pair (RJN, Exs. 1-2), Deckers is merely alleging that it sold under 1,000 pairs worth just over $100,000 per year for the last two decades.  Such minimal sales—a few thousand pairs per year for twenty years—do not support a plausible allegation of secondary meaning, i.e. the requisite mental association by a substantial segment of consumers between the alleged trade dress and Plaintiff. *Cf. Levi Strauss & Co.*, 778 F.2d at 1354; *compare adidas Am., Inc.*, 890 F.3d at 752, 754 (quoted *supra* p. 9) *with R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *7-*8 (C.D. Cal. May 1, 2019) (the "Sleevey" case).

The "Sleevey" case is particularly instructive, as there the court determined that "over $5.8 million in revenue" (more than specifically claimed in the Complaint) and having the product worn by "celebrities" (as Deckers claims) was insufficient. *Id.* at *7.  The court noted that this merely alleges "that Plaintiff has successfully sold its Sleevey products to date, which is insufficient to equate any 'secondary meaning' about any feature of the Sleevey products with the Sleevey brand." *R & A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *7.  Instead, "'[t]he test of secondary meaning is the effectiveness of the effort to create it,' not merely the effort to sell the product generally." *Id.* (quoting *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (internal citation omitted)).  The court thus concluded that the plaintiff had "not alleged that it sufficiently urged consumers to associate any particular feature of the Sleevey products with the Sleevey brand, other than by promoting the general design and purpose of sleeved undergarments in its

Rutan & Tucker, LLP
attorneys at law

2835/033814-0002
22381735.2 a07/02/25
-16-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS

advertisements." *Id.*

Here, too, the complaint "does not sufficiently allege enough factual matter to support a plausible finding that" the Deckers' claimed trade dress "has acquired secondary meaning[.]" *Id.* at *8. Specifically, Deckers' vaguely-alleged sales and a few celebrities wearing its shoes shows some commercial success, but not that Deckers has done anything to cause consumers to associate any trade dress features with Deckers. As stated by the USPTO, even extensive advertising expenditures (which the Complaint lacks) would be "not probative of whether consumers associate the specific design elements claimed … with a single source." (RJN, Ex. 7 at p. 5.) That is because the USPTO, like the courts, is concerned with advertising that attempts to create a mental association between the trade dress features and the source, i.e. "'look for' advertising" that "promotes the specific design features of the goods." *Id.* By this measure, the Complaint is utterly deficient: it fails to point to a single advertisement featuring the claimed trade dress at all, let alone any advertisement that promotes the features of the Claimed Tasman Trade Dress. The Complaint therefore makes conclusory allegations as to consumer recognition, secondary meaning, etc., but fails to provide any factual basis to believe that a "'learned association' exists between the source and the appearance of the product," *cf. Aurora World, Inc.*, 719 F. Supp. 2d at 1151 (internal quotations omitted).

As a whole, the Complaint fails to include sufficient factual allegations to plead secondary meaning. Plaintiff states vague and conclusory allegations, e.g. that the Claimed Tasman Trade Dress is "one of the most well-recognized and commercially successful styles of UGG® brand of footwear products" (Compl., ¶26), as it has done for unregistered trade dress claims for at least ten different shoes, trying to hide the lack of any facts relevant to recognition of the actual trade dress at issue by pointing to the recognition for the UGG® brand, HOKA® brand, or Teva® brand as a whole. (RJN, ¶¶11-15; Exs. 11-15.) That these allegations, including three entire paragraphs of boilerplate, may be used interchangeably for ten different shoes across three brands

demonstrates how meaningless they are, without any basis in fact for any given shoe. As the Complaint (1) only vaguely alleges sales over the last 20 years, (2) suggests that only under a thousand shoes have been sold per year in that time, (3) says nothing about exclusivity[3] (another basis for the USPTO's rejection of Deckers' original UGG® boot trade dress), and (4) is otherwise devoid of facts specific to the product at issue, its allegations fall woefully short of the minimum pleading requirements.

Plaintiff's extraneous praise of the UGG® brand's popularity as a whole does not translate into recognition for the Tasman, especially in view of the fact that Deckers conceded in the USPTO's rejection of its better-known original UGG® boot. (RJN Exs. C, E.)  The Complaint's single, threadbare recital that this trade dress has achieved "a high degree of consumer recognition and secondary meaning" (Compl., ¶¶13, 28) is unsupported by sufficient factual allegations to render it plausible, and so does not suffice under *Iqbal/Twombly*.  Because Plaintiff fails to allege an essential element of its trade dress infringement claims, these claims must be dismissed.

## B.    Plaintiff's Unfair Competition Claims Are Inadequately Pled

Plaintiff's unfair competition claims (Claims III and IV) must be dismissed because they are derivative of Plaintiff's failed trade dress infringement claims. Additionally, Plaintiff's allegation that it is entitled to attorney's fees in connection with its common law unfair competition is without legal basis and must be dismissed.

### 1.    The UCL and Common Law Claims Fail Because They Are Based on the Defective Trade Dress Infringement Claims

California's statutory Unfair Competition Law (the "UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To succeed on a UCL claim under any of its three prongs, a plaintiff must establish that the defendant engaged in a prohibited practice and that as a result of the defendant's actions, he or she suffered actual injury.  *Marolda v. Symantec Corp.*,

---

[3]    The Complaint lacks factual allegations on any other secondary meaning factor. *See Filipino Yellow Pages, Inc.*, 198 F.3d at 1152 (listing factors), *supra* at p. 7.

672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009).

Meanwhile, the "common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992)). "The Ninth Circuit has held that allegations of 'passing off,' are necessary to state a claim for common law unfair competition." *Bakemark USA, LLC v. Navarro*, No. LACV2102499JAKAGRX, 2023 WL 3317001, at *3 (C.D. Cal. Apr. 28, 2023) (citing and discussing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997)). "District courts in California have reached the same result." *Id.*, at *4 (citing *Lodestar Anstalt v. Bacardi & Co.*, No. 216CV06411CASFFMX, 2019 WL 8105378, at *16 (C.D. Cal. July 3, 2019), *aff'd*, 31 F. 4th 1228 (9th Cir. 2022) (holding that "[c]ommon law unfair competition is limited to where a party 'passes off their goods as [those of] another.'") (internal citation omitted)).

"[T]rade dress infringement claims under the Lanham Act and unfair competition claims under California Business and Professions Code section 17200 are inextricably linked." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.") (citation and quotations omitted)).

Plaintiff's unfair competition claims are predicated on the alleged infringement of Plaintiff's Claimed Tasman Trade Dress. (*See* Compl., ¶¶39-44 [addressing "Defendant's misappropriation and unauthorized use of the Tasman Trade Dress to promote the Accused Product …"], ¶¶45-51 [same].) In light of Plaintiff's failure to adequately plead its trade dress infringement claims (Claims I and II), these derivative Claims III and IV must be dismissed. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (noting that an unfair competition claim "must be

dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim"); *see also, e.g., Sugarfina, Inc. v. Sweet Pete's LLC*, No. 17-cv-4456-RSWL-JEM, 2017 WL 4271133, at *6 (C.D. Cal. Sept. 25, 2017) (dismissing unfair competition claims to the extent premised on inadequately pleaded trade dress infringement); *TSX Toys, Inc. v. 665, Inc.,* No. EDCV1402400RGKDTBX, 2015 WL 12791406, at *5 (C.D. Cal. Apr. 24, 2015) (same).

Because Plaintiff has failed to plead sufficient facts supporting secondary meaning for trade dress infringement, Plaintiff's unfair competition claims also fail.

### 2.    If the Common Law Unfair Competition Claim Survives, The Attorney's Fees Allegation Must Be Dismissed

The Complaint's allegation that Plaintiff is entitled to attorney's fees based on its unfair competition claim is improper and baseless as a matter of law.  Specifically, Plaintiff alleges in Claim IV (for "Unfair Competition – California Common Law") that it "is entitled to recover all damages, including attorneys' fees, that Deckers has sustained on account of Defendant's unfair competition, …." (Compl., ¶51)

However, "plaintiffs suing under the UCL may seek only injunctive and restitutionary relief, and the UCL does not authorize attorney fees." *See Sanabria v. Small Bus. Lending, LLC*, No. 223CV01096ODWMRWX, 2023 WL 4533914, at *3–4 (C.D. Cal. July 13, 2023) (construing 12(f) motion to strike as motion to dismiss, and dismissing request for attorneys' fees pursuant to the UCL) (quoting *Rose v. Bank of Am. N.A*., 57 Cal. 4th 390, 399 (2013)).  As case law expressly prohibits recovery of attorney fees under the UCL, and Plaintiff cites to no other statutory or case law authority providing for attorney's fees for a California unfair competition law claim, there is no legal basis for this attorney's fee allegation and it must be dismissed.

As this defect cannot be cured by any amendment, amendment would be futile, and the allegation must be dismissed without leave to amend.  *See Leadsinger, Inc. v. BMG Music Publ'g*., 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("The decision of whether to grant leave to amend nevertheless

remains within the discretion of the district court, which may deny leave to amend due to '[among other reasons] futility of amendment.'").

## V. **<u>CONCLUSION</u>**

Ultimately, the Court must protect fair competition and consumers' ability to buy shoes they want from sellers other than Deckers without confusion by requiring Deckers to plausibly allege secondary meaning, including facts specific to this shoe. For the foregoing reasons,  Costco respectfully requests that this Court grant its Motion to Dismiss, dismissing Claims I-IV in their entirety.  If any aspect of Deckers' Claim IV survives, Costco further respectfully requests that the Court dismiss the allegation of entitlement to attorney's fees in ¶50 of the Complaint without leave to amend, because that request is deficient as a matter of law and cannot be cured.


Dated:   July 2, 2025                                    RUTAN & TUCKER, LLP
                                                         MICHAEL D. ADAMS
                                                         MEREDITH L. WILLIAMS
                                                         SARAH VAN BUITEN


                                                         By:_____*/s/ Meredith L. Williams*_____
                                                             Meredith L. Williams
                                                             Attorneys for Defendant
                                                             COSTCO WHOLESALE
                                                             CORPORATION

Rutan & Tucker, LLP
attorneys at law

2835/033814-0002
22381735.2 a07/02/25

-21-

DEFENDANT COSTCO WHOLESALE
CORP.'S MOTION TO DISMISS

1

## **CERTIFICATE OF COMPLIANCE**

2       The undersigned, counsel of record for Defendant Costco Wholesale

3 Corporation, certifies that this brief contains 7,385 words, which:

4      _X_ complies with the word limit of L.R. 11-6.1.

5      __ complies with the word limit set by court order dated _____ [date].

6      Counsel relies on the word count of the word-processing application used to

7 prepare the brief.

8

9 Dated:  July 2, 2025         RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
10                      MEREDITH L. WILLIAMS
SARAH VAN BUITEN
11

12                 By:     */s/ Meredith L. Williams*
13                     Meredith L. Williams
Attorneys for Defendant
14                     COSTCO WHOLESALE
CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28