Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
**BLAKELY LAW GROUP**
1108 Manhattan Avenue, Suite B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401
**Attorneys for Plaintiff
Deckers Outdoor Corporation**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE CORPORATION, a Washington Corporation; and DOES 1-10, inclusive, <br><br> Defendant. | CASE NO.: 2:25-cv-04174-MCS-AGR <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:** <br><br> **1. TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT** <br><br> **2. TRADE DRESS INFRINGEMENT UNDER CALIFORNIA COMMON LAW** <br><br> **3. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *et seq.*** <br><br> **4. UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW** <br><br> **JURY TRIAL DEMANDED** |

1  Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") for its First
2  Amended Complaint against Defendant Costco Wholesale Corporation ("Costco" or
3  "Defendant") and DOES 1-10 (collectively "Defendants") alleges as follows:

## JURISDICTION AND VENUE

5  1. This action arises out of Defendant's complicit and unlawful acts
6  constituting trade dress infringement and unfair competition in violation of the
7  Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"),
8  patent infringement arising under the patent laws of the United States, 35 U.S.C.
9  § 1, *et seq.* and violations of statutory and common law of the state of California.

10  2. This Court has subject matter jurisdiction over the federal claims
11  asserted in this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental
12  jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a)
13  because they are so related to the federal claims that they form part of the same
14  case or controversy.

15  3. This Court has personal jurisdiction over Defendant because
16  Defendant has a regular and established place of business in this district, placed
17  infringing products in the stream of commerce directed to residents of this district,
18  derived commercial benefits from the sale of infringing products and caused
19  injuries to Plaintiff within the Central District of California.

20  4. Venue is proper under 28 U.S.C. §§ 1391(b)-(c) because a substantial
21  part of the events or omissions giving rise to the claims alleged occurred in this
22  judicial district and Plaintiff is located and has been injured in this judicial district,
23  and 28 U.S.C. § 1400(b) because Defendant has a regular and established place
24  of business in this district and committed acts of infringement in this judicial
25  district.

## THE PARTIES

27  5. Plaintiff Deckers Outdoor Corporation is a corporation organized
28  and existing under the laws of the state of Delaware with an office and principal

place of business located in Goleta, California. Deckers designs and markets footwear products under a number of well-known brands, including UGG® products covered by the intellectual property asserted in this Complaint.

6. Upon information and belief, Defendant Costco Wholesale Corporation is a corporation organized and existing under the laws of the state of Washington and a registered foreign entity doing business in the state of California (1587907) with an office and principal place of business located at 999 Lake Drive, Issaquah, Washington 98027.

7. Deckers is informed and believes that other individuals and entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each one was the agent and servant of the others and acting within the course and scope of said agency and employment. These other individuals and entities are sued under fictitious names DOES 1-10 because their true names and capacities are currently unknown to Deckers. Deckers will seek leave to amend this Complaint when the true names and capacities of DOES 1-10 are ascertained.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    Deckers' UGG® Brand**

8. Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975. Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®, Teva®, HOKA®, and AHNU®.

9. Deckers' UGG® brand is one of the most well-recognized premium comfort-leisure shoe brands in the United States. Since 1979, when the UGG® brand was founded, the popularity of UGG® footwear has steadily grown in the U.S. and around the world. UGG® footwear has been and remains highly coveted today by consumers as one of the most popular and recognizable symbols of luxury and style.

10. For example, in 2000, UGG® boots were featured on Oprah's Favorite Things® where Oprah emphatically declared on national television how much she "LOOOOOVES her UGG boots." Since then, the popularity of UGG® footwear has grown exponentially, with celebrities regularly seen wearing UGG® footwear, including the UGG® Tasman. For example, celebrities such as Hailey Bieber, Kendall Jenner, Gigi Hadid, Blake Lively, Shawn Mendes, Patrick Mahomes, and Emily Ratajkowski, among a myriad of others are regularly seen wearing the UGG® Tasman.

11. The UGG® Tasman has also received a large volume of unsolicited media attention and the UGG® Tasman has graced the pages of many popular magazines nationwide. For example, in January 2021, *The Guardian*, reported that "UGG is back" and cited rapper-singer-songwriter Stormzy as wearing a pair of UGG® Tasman to a BBC interview. (https://www.theguardian.com/fashion/2021/jan/28/cosy-gives-you-security-love-them-or-hate-them-uggs-are-back; last accessed July 23, 2025). Then in November 2023, *Hello Magazine* reported that "[a]ccording to Google's annual Shopping Holiday 100 list the search for the Tasman Slipper soared 900%" noting the high number of celebrities and "It" girls seen wearing the highly coveted style. (https://www.hellomagazine.com/hfm/wish-list/507908/tasman-ugg-slipper-how-to-wear-them/; last accessed July 23, 2025). And in September 2024, *Popsugar* declared "[i]f celebrity street style is any indicator on what's cool and trendy in the world of fashion, then [UGG® Tasman] might be the most popular style this season" and noted the "overwhelming love that celebrities have for the UGG Tasman Slippers". (https://www.popsugar.com/fashion/ugg-tasman-slippers-review-49308616; last accessed July 23, 2025). Recently, in January 2025, *NJ.com* labeled the UGG® Tasman "famous" noting it "has long been UGG[®] lovers' favorite slipper, selling out each winter multiple times after being restocked." (https://www.nj.com/shopping-deals/2025/01/ugg-has-the-sold-out-

1  tasman-slipper-back-in-stock-but-not-for-long.html; last accessed July 8, 2025). And in February 2025, *Forbes*, reported on the UGG® Tasman's continued popularity and world-wide recognition noting the UGG® Tasman has "been popular on TikTok for over a year now, so naturally they're hard to find in stock" with some colorways "sold out for months". (https://www.forbes.com/sites/forbes-personal-shopper/2025/02/21/ugg-tasman-slippers-in-stock/; last accessed July 8, 2025).

12. The world-wide recognition as a "premium" brand and the overwhelming popularity of the UGG® brand is due to Deckers' continuous commitment to quality and excellence. Today, Deckers' footwear products under the UGG® brand are widely available and sold to consumers in every state, including California, through UGG® Stores, authorized retailers on the internet and brick-and-mortar stores, as well as on the internet at www.ugg.com.

13. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® Tasman under the Tasman Trade Dress, and as a result, sold millions of dollars of the UGG® Tasman.

14. Due to the long use, extensive sales, and significant advertising and promotion of the UGG® Tasman by Deckers, the Tasman Trade Dress has achieved a high degree of recognition, widespread acceptance, and secondary meaning among consumers, the public, and those in the trade throughout the United States as a symbol that identifies Deckers as the source of footwear products featuring the Tasman Trade Dress.

15. Consumer recognition of the Tasman Trade Dress is further demonstrated by an *Eveready* survey conducted at the direction of Deckers in *Deckers Outdoor Corporation v. Last Brand, Inc.* for the UGG® Tasman in the post-sale context and evidenced approximately thirty-five percent of survey respondents mistakenly believed that a third-party infringing product was

1  authorized by or affiliated with Plaintiff. This is relevant to a finding of secondary
2  meaning. *McCarthy on Trademarks* § 15:11 ("If there is reliable evidence of
3  actual customer confusion, then it follows logically that there must also be some
4  secondary meaning in the senior user's designation. If people were not aware of
5  the trademark significance of the senior mark, how could they be confused as to
6  source or affiliation?"); *see also American Scientific Chemical, Inc. v. American*
7  *Hosp. Supply Corp.*, 690 F.2d 791, 793, 216 U.S.P.Q. 1080 (9th Cir. 1982).

8      16. The fact that others, including but not limited to Defendant, have
9  deliberately copied the UGG® Tasman, the embodiment of the Tasman Trade
10 Dress, demonstrates secondary meaning in the marketplace.

11     **B.   Defendant's Infringing Activities**

12     17. This lawsuit arises from Defendant's design, manufacture,
13 importation, distribution, advertisement, marketing, offering for sale, and sale in
14 the U.S. of certain footwear products that infringe upon Deckers' "Tasman Trade
15 Dress" (the "Accused Product").

16     18. Upon information and belief, Defendant Costco is engaged in the
17 retail sale of a wide range of apparel through its brick and mortar retail stores
18 located nationwide, including stores located within this judicial district, as well as
19 through its website (www.costco.com) that is accessible to customers nationwide,
20 including to those within this judicial district

21     19. Upon information and belief, Costco is a competitor of Deckers and
22 introduced the Accused Product into the stream of commerce in an effort to
23 exploit Deckers' goodwill and the reputation of the UGG® Tasman.

24     20. Deckers has not granted Defendant a license to practice nor given
25 Defendant any form of permission to use Deckers' trademarks, trade dresses, or
26 patents, including the Tasman Trade Dress.

27     21. Upon information and belief, Defendant imported into the U.S.,
28 advertised, marketed, offered for sale, and/or sold at least the Accused Product

identified by name as Kirkland Signature® brand "Kirkland Signature Unisex Shearling Slipper" through Costco's retail stores and its website (www.costco.com) to consumers nationwide, including consumers located within this judicial district.

**Accused Product – Kirkland Signature® Unisex Shearling Slipper**



**UGG® Tasman**



22. Upon information and belief, Defendant may have sold additional products that infringe upon Deckers' design patents and trade dresses. Deckers will seek leave to amend as additional information becomes available through discovery.

23. Upon information and belief, and as evidenced by Defendant's close copying of the UGG® Tasman, Defendant has acted in bad faith and Defendant's unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of the Accused Product with Deckers, and/or the origin, sponsorship, or approval of the Accused Product by Deckers.

### FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement - 15 U.S.C. § 1125(a))

24. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

25. For more than 20 years Deckers has sold the UGG® Tasman,

marketed and featuring the design elements protected under the "Tasman Trade Dress." The Tasman Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

    a.    An embroidered braid around the opening of the upper;

    b.    A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;

    c.    A raised and rounded dome shaped toe;

    d.    Brushed suede-like exterior; and

    e.    A thick, flat outsole.

26. The Tasman Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry; examples of its distinctive appearance as a whole are shown in the photographs below:




27. The design of the Tasman Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tasman Trade Dress. The combination of features comprising the Tasman Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tasman, the embodiment of the Tasman Trade Dress, as a distinct product

1 | originating solely from Deckers.

2 |     28.    The UGG® Tasman, the embodiment of the Tasman Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tasman has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman and graced the pages of many popular magazines nationwide and internationally.

    29.    The UGG® Tasman has also received a large volume of unsolicited media attention and the UGG® Tasman has graced the pages of many popular magazines nationwide. For example, in January 2021, *The Guardian*, reported that "UGG is back" and cited rapper-singer-songwriter Stormzy as wearing a pair of UGG® Tasman to a BBC interview. (https://www.theguardian.com/fashion/2021/jan/28/cosy-gives-you-security-love-them-or-hate-them-uggs-are-back; last accessed July 23, 2025). Then in November 2023, *Hello Magazine* reported that "[a]ccording to Google's annual Shopping Holiday 100 list the search for the Tasman Slipper soared 900%" noting the high number of celebrities and "It" girls seen wearing the highly coveted style. (https://www.hellomagazine.com/hfm/wish-list/507908/tasman-ugg-slipper-how-to-wear-them/; last accessed July 23, 2025). And in September 2024, *Popsugar* declared "[i]f celebrity street style is any indicator on what's cool and trendy in the world of fashion, then [UGG® Tasman] might be the most popular style this season" and noted the "overwhelming love that celebrities have for the UGG Tasman Slippers". (https://www.popsugar.com/fashion/ugg-tasman-slippers-review-49308616; last accessed July 23, 2025). Recently, in January 2025, *NJ.com* labeled the UGG® Tasman "famous" noting it "has long been UGG[®] lovers' favorite slipper, selling out each winter multiple times after being restocked." (https://www.nj.com/shopping-deals/2025/01/ugg-has-the-sold-out-tasman-slipper-back-in-stock-but-not-for-long.html; last accessed July 8, 2025). And in February 2025, *Forbes*, reported on the

UGG® Tasman's continued popularity and world-wide recognition noting the UGG® Tasman has "been popular on TikTok for over a year now, so naturally they're hard to find in stock" with some colorways "sold out for months". (https://www.forbes.com/sites/forbes-personal-shopper/2025/02/21/ugg-tasman-slippers-in-stock/; last accessed July 8, 2025).

30. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tasman Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tasman Trade Dress.

31. Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tasman Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of UGG® Tasman, the embodiment of the Tasman Trade Dress. Accordingly, the Tasman Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

32. Consumer recognition of the Tasman Trade Dress is demonstrated by an *Eveready* survey conducted at the direction of Deckers in *Deckers Outdoor Corporation v. Last Brand, Inc.* for the UGG® Tasman in the post-sale context and evidenced approximately thirty-five percent of survey respondents mistakenly believed that a third-party infringing product was authorized by or affiliated with Plaintiff, which is relevant to a finding of secondary meaning. *McCarthy on Trademarks* § 15:11 ("If there is reliable evidence of actual customer confusion, then it follows logically that there must also be some secondary meaning in the senior user's designation. If people were not aware of the trademark significance of the senior mark, how could they be confused as to source or affiliation?"); *see also American Scientific Chemical, Inc. v. American Hosp. Supply Corp.*, 690 F.2d 791, 793, 216 U.S.P.Q. 1080 (9th Cir. 1982).

33. Upon information and belief, Defendant are competitors of Deckers and Defendant introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tasman.

34. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bear confusingly similar reproductions of the Tasman Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Deckers of the Accused Products.

35. Defendant's use of the Tasman Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property. There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Tasman Trade Dress.

36. Defendant's use of the Tasman Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

37. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendant as a result of its infringing acts.

38. Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendant's infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Tasman Trade Dress, or any designs confusingly similar thereto.

**SECOND CLAIM FOR RELIEF**

**(Trade Dress Infringement– California Common Law)**

39. Deckers incorporates by reference each and every one of the

preceding paragraphs as though fully set forth herein.

40. Defendant's infringement of the Tasman Trade Dress also constitutes trade dress infringement under common law of the state of California.

41. The Accused Product manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendant bears confusingly similar reproductions of the Tasman Trade Dress such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Product.

42. Defendant's unauthorized use of the Tasman Trade Dress has caused and is likely to cause confusion as to the source of Accused Product among consumers.

43. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendant's infringement, and all gains, profits and advantages obtained by Defendant as a result of its unlawful acts.

44. Defendant's unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

45. Furthermore, unless Defendant's unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the damages caused by Defendant's infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendant from continuing to infringe the Tasman Trade Dress, or any designs confusingly similar thereto.

### THIRD CLAIM FOR RELIEF

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 *et. seq.*)**

46. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

47. Defendant's misappropriation and unauthorized use of the Tasman Trade Dress to promote the Accused Product is likely to confuse or mislead consumers into believing that such products are authorized, licensed, affiliated, sponsored, and/or approved by Deckers, constituting deceptive, unfair, and fraudulent business practices and unfair competition in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*

48. Upon information and belief, Defendant's deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the Tasman Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Tasman.

49. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

50. Deckers is entitled to all available relief provided for under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*, including an accounting and disgorgement of all illicit profits that Defendant made on account of its deceptive, unfair, and fraudulent business practices.

51. Furthermore, because Deckers has no adequate remedy at law for Defendant's ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendant from unfair competition.

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition – California Common Law)

52. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

53. Defendant's misappropriation and unauthorized use of the Tasman Trade Dress to promote the Accused Product also constitutes unfair competition

in violation of common law of the state of California.

54. Deckers has expended substantial time, resources and effort in creating and developing UGG® footwear, including the UGG® Tasman, the embodiment of the Tasman Trade Dress, which consumers recognize as originating from Deckers.

55. Upon information and belief, Defendant introduced Accused Product into the stream of commerce in order to exploit Deckers' goodwill and the reputation established in the UGG® Tasman for Defendant's own pecuniary gain.

56. Defendant's unauthorized use of the Tasman Trade Dress resulted in Defendant unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Tasman.

57. Upon information and belief, Defendant's unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

58. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that Deckers has sustained on account of Defendant's unfair competition, and all gains, profits and advantages obtained by Defendant as a result of its unlawful acts. Furthermore, because Deckers has no adequate remedy at law for Defendant's ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendant from unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Deckers Outdoor Corporation respectfully prays for judgment against Defendant Costco Wholesale Corporation and DOES 1-10 as follows:

1. A judgment that Defendant infringed Deckers' Tasman Trade Dress;

2. An order permanently enjoining and restraining Defendant, its agents, servants, employees, officers, associates, and all persons acting in concert with any of them from infringing Deckers' intellectual property at issue, including but not limited to infringing acts such as:

    a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Product or any other products that bear an identical or confusingly similar design as Deckers' Tasman Trade Dress;

    b. engaging in any other activity constituting unfair competition with Deckers, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Deckers; and

    c. committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendant are licensed, authorized, offered, produced, sponsored, or in any other way associated with Deckers;

3. An order requiring Defendant to recall from any distributors and retailers and to deliver to Deckers for destruction any Accused Product, including the means of making such products;

4. An order requiring Defendant to file with this Court and serve on Deckers within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendant complied with the injunction;

5. An order for an accounting of all gains, profits and advantages derived by Defendant on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), Cal. Bus. & Prof. Code, § 17200 *et. seq.*, and any other applicable federal statute or California state and common law;

6. An award of damages equal to Defendant's profits and all damages sustained by Deckers as a result of Defendant's wrongful acts;

7. An award of damages equal to treble Defendant's profits or Deckers' damages, whichever is greater, on account of Defendant's willful infringement;

8. An award of punitive damages and Deckers' costs, attorneys' fees, and interest as allowed under all applicable federal statutes and California state laws; and

9. All other relief that the Court may deem just and proper.

Dated: July 23, 2025        **BLAKELY LAW GROUP**

By: /s/ Jamie Fountain
Brent H. Blakely
Jamie Fountain
**Attorneys for Plaintiff
Deckers Outdoor Corporation**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deckers Outdoor Corporation hereby demands a trial by jury as to all claims in this Civil Action.

Dated:    July 23, 2025        **BLAKELY LAW GROUP**

                                        By:    */s/ Jamie Fountain*
                                                  Brent H. Blakely
                                                  Jamie Fountain
                                                  **Attorneys for Plaintiff**
                                                  **Deckers Outdoor Corporation**