1  Brent H. Blakely (SBN 157292)
   bblakely@blakelylawgroup.com
2  Jamie Fountain (SBN 316567)
   jfountain@blakelylawgroup.com
3  BLAKELY LAW GROUP
   1108 Manhattan Avenue, Suite B
4  Manhattan Beach, California 90266
   Telephone: (310) 546-7400
5  Facsimile: (310) 546-7401

6  **Attorney for Plaintiff
   Deckers Outdoor Corporation**

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 DECKERS OUTDOOR                ) Case No. 2:25-cv-04174-MCS-AGR
   CORPORATION, a Delaware        )
   Corporation,                   ) **PLAINTIFF'S OPPOSITION TO**
12                                 ) **DEFENDANT'S MOTION TO**
                                   ) **DISMISS FIRST AMENDED**
               Plaintiff,          ) **COMPLAINT**
13                                 )
14       v.                        ) Hon. Mark C. Scarsi
                                   )
15 COSTCO WHOLESALE                ) Hearing:
   CORPORATION, a Washington       ) Date: September 15, 2025
16 Corporation; and DOES 1-10,     ) Time: 9:00 a.m.
   inclusive,                      ) Ctrm: 7C
17                                 )
                                   ) Date Action Filed: May 9, 2025
18             Defendants.         ) Trial Date: Not Set
                                   )
19

20

21

22

23

24

25

26

27

28

---
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.    **INTRODUCTION** .................................................................................1

II.   **BACKGROUND** ................................................................................3

    **A. Factual Background** ...................................................................3

    **B. Procedural Background** .............................................................3

III.  **STANDARD OF REVIEW ON MOTION TO DISMISS** ...................3

IV.  **ARGUMENT**.....................................................................................5

    A.    **Costco's Motion Violates Rule 12(b)(6)**........................................5

    B.    **Deckers' Trade Dress Claims (Counts I and II) Are Sufficiently Pled** ...............................................................................5

        1.    **Defendant's secondary meaning challenge to Deckers' FAC is Meritless** ...............................................................5

        2.    **Deckers Has Not Abandoned the UGG® Tasman or the Tasman Trade Dress**......................................................17

    C.    **Deckers' Unfair Competition Claims (Counts III and IV) Are Sufficiently Pled** ..........................................................................18

    D.    **Deckers Attorney's Fees allegations in Count IV should not be dismissed** .....................................................................................19

V.   **DECKERS SHOULD BE GRANTED LEAVE TO AMEND**.............19

VI.  **CONCLUSION** ................................................................................19

1

# **TABLE OF AUTHORITIES**

2

## CASES

3

*adidas Am., Inc. v. Skechers USA, Inc.*,
    890 F.3d 747, (9th Cir. 2018) ................................................................ 11

4

*Adidas-Salomon AG v. Target Corp.*,
    228 F. Supp. 2d 1192, (D. Or. 2002) ................................................. 6, 13

5

6

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984, (9th Cir. 1995) ................................................................ 14

7

*American Scientific Chemical v. American Hosp. Supply*,
    690 F.2d 791, (9th Cir. 1982) .............................................................. 14

8

9

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138, (9th Cir. 2009) .............................................................. 5

10

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................... 4, 9

11

12

*Ashlar, Inc. v. Structural Dynamics Research Corp.*,
    1995 WL 639599 (N.D. Cal. June 23, 1995) ............................................. 7

13

*Audemars Piguet v. Swiss Watch Intl.*,
    46 FS3d 255, (SDNY 2014) ................................................................ 14

14

15

*Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*,
    283 F.2d 551, (9th Cir. 1960) .......................................................... 7, 12

16

*Audio-Technica Corp. v. Music Tribe Commercial My Sdn. Bhd.*,
    2022 WL 1423223, (C. D. Cal., 2022) ............................................... , 9, 16

17

18

*Bautista v. Los Angeles County*,
    216 F. 3d 837, (9th Cir. 2000) .............................................................. 2

19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 2, 4, 9

20

21

*Benefit Cosmetics v. Elf Cosmetics*,
    2024 WL 5135604 at *13 ................................................................... 15

22

*Bentley v. Sunset House Distrib. Corp.*,
    359 F.2d 140, (9th Cir. 1966) .............................................................. 18

23

24

*Billiards Inc. v. Sixshooters Inc.*,
    251 F.3d 1252, (9th Cir. 2001) ............................................................ 15

25

*Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*,
    2014 WL 585436 (CD Cal. Feb. 13, 2014) ............................................. 17

26

27

*Cairns v. Franklin Mint Co.*
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ................................................... 16

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Calyx Techs., Inc. v. Ellie Mae, Inc.*,
   2004 U.S. Dist. LEXIS 19496 (N.D. Cal. Sept. 3, 2004) ................................. 10

*Centaur Communications v. A/S/M Communications*,
   830 F.2d 1217, (2d Cir.1987) ..................................................................... 18

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
   870 F.2d 512, (9th Cir) ................................................................................. 6

*Daniels v. Specialized Loan Servicing Inc.*,
   2024 WL 4452478 (C.D. Cal. Sept. 17, 2024) ............................................... 2

*Daniels v. Specialized Loan Servicing, LLC*,
   2023 WL 4291651 (C.D. Cal. Apr. 20, 2023) ................................................. 2

*Dean v. Cortes*,
   2018 WL 3425016, (C.D. Cal. July 12, 2018) ........................................ 7, 17

*Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.*,
   No. 2:20-cv-09521-FLA(Ex), 2024 WL 2208099, (C.D. Cal. 2024) ............... 12

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655, (9th Cir. 1992) ....................................................................... 19

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. ........................................................................ 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990, (9th Cir. 2014) ....................................................................... 4

*Faberge, Inc. v. Saxony Products, Inc.*,
   605 F.2d 426, (9th Cir. 1979) ....................................................................... 6

*First Brands Corp. v. Fred Meyer, Inc.*,
   809 F.2d 1378 (9th Cir.1987) ....................................................................... 14

*Deckers Outdoor Corporation v. Fortune Dynamic, Inc.*,
   2015 WL 12731929 (C.D. Cal. May 8, 2015) ................................................. 8

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
   2012 WL 3072327, (C.D. Cal. Apr. 25, 2012) ............................................... 13

*Glassybaby, LLC v. Provide Gifts, Inc.*,
   2011 WL 2218583 (W.D. Wash. June 6, 2011) ............................................. 10

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542, (9th Cir. 1989) ..................................................................... 5

*Hart v. Larson*,
   232 F. Supp. 3d 1128, (S.D. Cal. 2017) ........................................................ 19

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
   2015 WL 476287 *4 (C.D. Cal. Feb. 5, 2015) ............................................... 9

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
   68 F.4th 1203,  (9th Cir. 2023) ..................................................... 6, 11, 12, 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*John Lonberg v. City of Riverside*,
  300 F. Supp. 945 (2004) ........................................................................ 19

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163, (1993) ............................................................................... 2

*Levi Strauss & Co. v. Blue Bell, Inc.*
  778 F.2d 1352, 1355 (9th Cir. 1985) ...................................................... 16

*Maljack Prods. v. GoodTimes Home Video Corp.*,
  81 F.3d 881, (9th Cir. 1996) ................................................................... 18

*Mercury Cas. Co. v. Brasscraft Mfg. Co.*,
  2020 WL 3230289, (C.D. Cal. Mar. 2, 2020) ........................................... 5

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975, (9th Cir. 2006) .................................................................. 2

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
  2021 WL 922074, at *4 ..................................................................... 14, 17

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ................................................................... 9

*P & P Imps. LLC v. Johnson Enters., LLC*,
  46 F.4th 953, (9th Cir. 2022) ............................................... 3, 6, 11, 12, 18

*PaperCutter, Inc. v. Fay's Drug Co.*,
  900 F.2d 558 (2d Cir.1990) ...................................................................... 7

*Paramount Farms Intern. LLC v. Keenan Farms, Inc.*,
  2012 WL 5974169, (C.D. Cal. Nov. 28, 2012) ......................................... 13

*Parks v. Tyson Foods*,
  863 F3d 220, (3d Cir. 2017) .................................................................... 14

*R & A Synergy LLC v. Spanx, Inc.*,
  No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, (C.D. Cal. May 1, 2019) .................................................................................................. 8

*Resnick v. Hayes*,
  213 F.3d 443, (9th Cir. 2000) .................................................................. 4

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................. 9

*Solid Host, NL v. Namecheap, Inc.*,
  652 F.Supp.2d 1092 (C.D. Cal. 2009) ....................................................... 7

*Spirit Clothing Co. v. N.S. Enterprises, Inc., et al.*,
  2013 WL 12144107 (C.D. Cal. July 23, 2013) ..................................... 7, 17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979, (9th Cir. 2001) .................................................................. 4

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Starr v. Baca*,
    652 F.3d 1202, (9th Cir. 2011) ................................................................ 4

*Sugarfina, Inc. v. Sweet Pete's LLC*,
    2017 WL 4271133, (C.D. Cal. Sept. 25, 2017) ................................. 7, 17

*Sunburst Prod., Inc. v. Derrick Law Co.*,
    922 F.2d 845, (9th Cir. 1991)) ............................................................ 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308, (2007) ............................................................................ 4

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ............................................................................ 18

*Vans v. Walmart*,
    2023 WL 6922833 (CD Cal. Oct. 11, 2023) ...................................... 11

*Vision Sports, Inc. v. Melville Corp.*,
    888 F.2d 609 (9th Cir. 1989) ............................................................... 6

*Vital Pharms. Inc. v. Monster Energy Co*,
    472 F. Supp. 3d 1237, (S.D. Fla. 2020) ............................................ 13

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168, (N.D. Cal. 2007) ........................................... 14

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136, (9th Cir. 2012) ............................................................ 4

<u>STATUTES</u>

15 U.S.C. §1117 ......................................................................................... 19

<u>OTHER AUTHORITIES</u>

*McCarthy on Trademarks and Unfair Compeition,*
    § 15:11(2025 ed) ................................................................................. 14

*McCarthy on Trademarks and Unfair Competition*,
    §15:8 (2025 ed) ................................................................................... 18

<u>RULES</u>

FRCP 12(b)(6) ........................................................ 3, 4, 5, 16, 17, 19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    __INTRODUCTION__

Costco's Rule 12(b)(6) Motion is a meritless, transparent attempt to frustrate Deckers' ability to conduct discovery and move this case forward. Deckers, one of the most respected footwear companies in the United States, commenced this action shortly after learning that Costco was once again selling low-quality knockoffs of Deckers' iconic footwear. Although Deckers sued Costco in 2023 for selling knockoffs of its famous UGG® Classic Ultra Mini Boot, Costco is infringing again, selling a knockoff of another beloved Deckers product, the UGG® Tasman.

     

| **UGG® Tasman** | **Defendant's infringing Kirkland Signature® Unisex Shearling Slipper** |

If these products look similar, that is because Costco intended them to be. Indeed, customers and the media have frequently referred to Costco's lookalike products as low-cost "look alike" or "copies" of Deckers' distinctive designs. Unable to contend with the irrefutable evidence of its copying, Costco has filed a Rule 12(b)(6) motion which offers no valid basis for dismissal.

Costco's Motion should be denied because it is a disguised motion for summary judgment—and a defective one at that. Far from being an attack on the pleadings, it is a flawed and improperly noticed motion for summary judgment that relies on dozens of pages of documents from a variety of sources, which lack any foundation, and which Costco has not even attempted to authenticate. Indeed, Costco's Motion asks the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Court to make intensely factual determinations about the footwear industry that would
2  not even be proper on summary judgment. Costco's improperly submitted extrinsic
3  evidence should be disregarded, and its Motion rejected for attempting to circumvent
4  this District's exacting rules for summary judgment.

5  Defendant's Motion to Dismiss is directed towards whether Plaintiff has
6  adequately alleged that the Tasman Trade Dress has achieved secondary meaning. As
7  with any such motion, the starting point is FRCP 8, which requires in pertinent part
8  that a plaintiff provide "a short and plain statement of the claim showing that the
9  pleader is entitled to relief." FRCP 8(a)(2). A complaint is sufficient if it gives the
10  defendant "fair notice of what the … claim is and the grounds upon which it rests."
11  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1] It is well established that
12  "[w]hether a mark has obtained secondary meaning is question of fact to be determined
13  by a jury." *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 991 (9th Cir. 2006).[2]
14  Notably, Deckers is not required to *prove* that the Tasman Trade Dress has acquired
15  secondary meaning at this stage, and is only required to sufficiently plead facts, that
16  when taken as true, are plausible on the face. Here, Deckers has sufficiently alleged
17  that the Tasman Trade Dress has gained distinctiveness through longstanding use,
18  significant sales, widespread coverage in print and social media, extensive marketing
19  and promotion, and through celebrity and influencer sightings and endorsement. In
20  addition to citing to survey evidence, Plaintiff has also alleged that Costco deliberately

---

21
22  [1] Except in those cases where pleading "with particularity" is required, the complaint
23  need not contain detailed factual allegations supporting the claim. Instead, federal
   courts and litigants "must rely on summary judgment and control of discovery to weed
24  out unmeritorious claims." *Leatherman v. Tarrant County Narcotics Intelligence &
   Coordination Unit*, 507 U.S. 163, 168-9 (1993); *Bautista v. Los Angeles County*, 216
25  F. 3d 837, 843 (9th Cir. 2000).
26  [2] Whether the Tasman Trade Dress has achieved secondary meaning is "a disputed
   question of fact". *Daniels v. Specialized Loan Servicing, LLC*, 2023 WL 4291651
27  (C.D. Cal. Apr. 20, 2023) (Scarsi, J.). As such, it "is an inappropriate basis to grant a
   motion to dismiss under Rule 12(b)(6)." *Id*.; *see also Daniels v. Specialized Loan
28  Servicing Inc*., 2024 WL 4452478 (C.D. Cal. Sept. 17, 2024) (Scarsi, J.)

copied the UGG® Tasman Trade Dress – "Defendant [sic] are competitors of Deckers and Defendant introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tasman." ECF No. 23 ¶33. This alone creates an inference of secondary meaning. *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961-2 (9th Cir. 2022) ("Proof of copying strongly supports an inference of secondary meaning."). Because Deckers has gone well beyond what is required by Rule 8 and has adequately alleged secondary meaning, Costco's flawed motion to dismiss should be denied.

## II.    BACKGROUND

### A. Factual Background

Deckers is one of the biggest footwear companies in the United States; its iconic brands include UGG®, HOKA®, Teva®, and AHNU®. ECF No. 23 ("FAC") ¶ 8. Since 1979, when the UGG® brand was founded, it has become of the most well-recognized premium comfort-leisure footwear brands in the U.S. and around the world. *Id.* ¶ 9.

Defendant Costco sells a wide range of products with numerous "brick-and-mortar" retail stores across the United States. *Id.* ¶ 18. Costco's products, including the Accused Products were sold in its retail stores as well as online at www.costco.com, to consumers nationwide. *Id.* ¶¶ 18, 19, 21.

### B. Procedural Background

Shortly after learning of Defendant's infringing activity, Plaintiff filed its initial complaint on May 9, 2025. ECF No. 1. On July 2, 2025, Defendant filed its first Motion to Dismiss the Complaint. ECF No. 19. Pursuant to Rule 15(a)(1)(B), Plaintiff filed its First Amended Complaint (FAC) on July 23, 2025. ECF No. 23.  On August 6, 2025, Costco filed its second Motion to Dismiss.  ECF No. 25.

## III.    STANDARD OF REVIEW ON MOTION TO DISMISS

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "[C]ourts

must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681. Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1  **IV.**   **ARGUMENT**

2     **A. Costco's Motion Violates Rule 12(b)(6)**

3       Costco's Motion is a Rule 12(b)(6) Motion in name only. As discussed below

4  and in Deckers' Objection to Costco's Request for Judicial Notice, Costco's Motion

5  relies on dozens of pages of extrinsic evidence that is not subject to judicial notice.

6  Costco relies on this extrinsic evidence even though it is reversible error for a district

7  court to consider it on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner*

8  *& Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (reversing district court's judgment because

9  it relied on extrinsic evidence); *see also Mercury Cas. Co. v. Brasscraft Mfg. Co.*, 2020

10 WL 3230289, at *2 (C.D. Cal. Mar. 2, 2020) (denying Rule 12 motion that relied on

11 evidence beyond complaint to contradict its allegations).

12      Costco should have raised these issues in a motion for summary judgment, not a

13 Rule 12(b)(6) motion, which would have required compliance with L.R. 56-1 and

14 requires a party to lodge a proposed "Statement of Uncontroverted Facts and

15 Conclusions of Law" setting forth the material facts to which the moving party contends

16 there is no genuine dispute. The Court should reject Costco's attempted end-run around

17 these requirements.[3]

18      **B. Deckers' Trade Dress Claims (Counts I and II) Are Sufficiently Pled**

19          **1.  Defendant's secondary meaning challenge to Deckers' FAC is**

20              **Meritless**

21      "To succeed on a trade dress infringement based on product design, the plaintiff

22 must show that her design has attained secondary meaning." *Art Attacks Ink, LLC v.*

23 *MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). When deciding whether

24 secondary meaning exists for a particular trade dress, courts consider such things as:

25 (1) whether actual purchasers associate the dress with the source; (2) the degree and

26 _____

27 [3] Although Rule 12(d) permits the Court to convert a defective Rule 12(b)(6) Motion to
   a motion for summary judgment, it would unfairly prejudice Deckers to do so here

28 where is has been unable to conduct discovery in this case.

manner of advertising by the party seeking protection; (3) the length and manner of use of the dress, and (4) whether the use by the party seeking protection has been exclusive. *See Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir), cert denied, 493 U.S. 872 (1989). Other considerations such as sales success and attempts by others to imitate the mark also favor finding secondary meaning. See *Clicks Billiards*, 251 F.3d at 1266.  Finally, if a defendant deliberately copies a trade-dress, a strong inference arises of secondary meaning. *Id*.; *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609,615 (9th Cir. 1989) ("[P]roof of copying strongly supports an inference of secondary meaning."); *Adidas-Salomon Ag v. Defendants Corp.*, 228 F. Supp. 2d 1192 (D. Or. 2002). That is because competitors generally copy "to realize upon a secondary meaning that is in existence." *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961-2 (9th Cir. 2022); *see also Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214-5 (9th Cir. 2023). At this stage, the Court need only decide whether the FAC sufficiently alleges that the Tasman Trade Dress has achieved secondary meaning.

As this Court can see from the Complaint, Plaintiff has alleged that the UGG® Tasman, the embodiment of the Tasman Trade Dress:

-the UGG® Tasman has received a wide amount of unsolicited media attention (FAC ¶¶10&11),

-Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® Tasman under the Tasman Trade Dress, and as a result, sold millions of dollars of the UGG® Tasman (*Id.* ¶13),

-The UGG® Tasman has had long use, extensive sales and significant advertising (*Id.* ¶14),

-Secondary meaning of the UGG® Tasman is supported by a survey from a prior lawsuit (*Id.* ¶15),

-Defendant, and others, have deliberately copied the UGG Tasman.[4] (*Id*. ¶16).

If Defendant means to suggest that Deckers must pack its complaint with *all* its supporting evidence on the issue of secondary meaning, that notion is absurd. Courts, including this one, have found that secondary meaning need only be pled "generally" to survive a motion to dismiss. *Dean v. Cortes*, 2018 WL 3425016, *6 (C.D. Cal. July 12, 2018) (Snyder, C); citing *Spirit Clothing Co. v. N.S. Enterprises, Inc.*, 2013 WL 12144107 at *3 (C.D. Cal. July 23, 2013) (finding that a plaintiff sufficiently alleged secondary meaning insofar as the mark had been used for a number of years and because consumers associated the mark with plaintiff's product); *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *5 (C.D. Cal. Sept. 25, 2017) (same). The existence of secondary meaning "may be 'inferred from evidence relating to the nature and extent of the public exposure achieved by the designation,' or from proof of intentional copying," *Ashlar, Inc. v. Structural Dynamics Research Corp*., 1995 WL 639599, 5 (N.D. Cal. June 23, 1995) (quoting *PaperCutter, Inc. v. Fay's Drug Co*., 900 F.2d 558, 564 (2d Cir.1990). A specific allegation of the existence of secondary meaning is not required. *Solid Host, NL v. Namecheap, Inc*., 652 F.Supp.2d. 1092, 1108 (C.D. Cal. 2009). Thus, Deckers is not required to produce every piece of evidence to support its allegations that its trade dress has acquired secondary meaning in order to survive a motion to dismiss. *Id.* ("[B]ecause the existence of secondary meaning "may be 'inferred from evidence relating to the nature and extent of the public exposure achieved by the designation,' or from proof of intentional copying," a

---

[4] Defendant's intentional and close copying of Deckers' Tasman Trade Dress, alone, is sufficient to establish secondary meaning. *Faberge, Inc. v. Saxony Products, Inc*., 605 F.2d 426, 428 (9th Cir. 1979). "There is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc*., 283 F.2d 551, 558 (9th Cir. 1960).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

plaintiff asserting ownership of a common law trademark need not specifically allege the existence of secondary meaning to survive a motion to dismiss.").[5]

While Defendant attempts to split hairs with the allegation that "millions of dollars" worth of UGG® Tasman have been sold over the past twenty years and speculates that "millions" could be as small as one or two million dollars, Plaintiff has alleged that because of these sales, and the advertising, media attention etc. responsible for generating same, "the Tasman Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress." FAC ¶31. Thus, Deckers' allegations, when taken as true, are enough to support a plausible allegation that secondary meaning has been achieved. More importantly, Defendant has cited no case law to support its position that Plaintiff is required to allege the *specific* number of units and dollars sold of the UGG® Tasman.[6]

Defendant's reliance on *R & A Synergy LLC v. Spanx, Inc*., No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *7-*8 (C.D. Cal. May 1, 2019) (the "*Sleevey*"

---

[5] In support of its argument that the FAC fails to adequately allege secondary meaning Defendant references a prior Deckers' complaint from *Fortune Dynamic*. However, Defendant's reliance on this case is flawed. In *Fortune Dynamic* the court found that plaintiff only conclusorily pled that secondary meaning had been acquired because plaintiff generally stated that the trade dress was commercially successful and recognized. The *Fortune Dynamic* court held that "the complaint alleges that the Bailey Button Boot Trade Dress has 'achieved widespread acceptance and recognition among the consuming public and trade throughout the United States,' it fails to complete this assertion and state what the consuming public accepts and recognizes about the trade dress. *Fortune Dynamic, Inc*., 2015 U.S. Dist. LEXIS at *17. Here, the allegations in the FAC are not fashioned in the same manner as the allegations in the *Fortune Dynamic* complaint and Deckers pleads more than just conclusions.
[6] While Deckers is a public corporation, the number of sales it receives for specific products is confidential. Consequently, specific sales amounts are only provided after a protective order has been entered in a case and are appropriately designated. To require Deckers to insert specific numbers into a complaint would require that the pleading be filed under seal pursuant to a protective order.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

case) is readily distinguishable. In *Sleevey*, the court granted the motion to dismiss finding that the plaintiff merely made conclusory allegations to support secondary meaning. *See R & A Synergy LLC v. Spanx, Inc.,* 2019 WL 4390564, at *7-8. The *Sleevey* Court found that the vague allegations of sales data and celebrity sightings was not sufficient to allege secondary meaning. *Id.* Here, Deckers has notably alleged much more than just number of units and dollar amounts sold, including specific examples of how the UGG® Tasman is one of the most well-recognized and commercially successful styles of the UGG® brand (FAC ¶ 10-16, 28-32), specific examples of media attention and celebrity favoritism (FAC ¶ 10-11, 28-29), and specific examples of survey evidence supporting a finding of secondary meaning (FAC ¶ 15, 32).

Likewise, Defendant's reliance on *Audio-Technica* is misplaced as it was decided in relation to a motion for preliminary injunction, "an extraordinary remedy" requiring the moving party to meet its burden with a "clear showing that preliminary injunction is warranted" and a "likelihood of success on the merits." *Audio-Technica Corp. v. Music Tribe Commercial My Sdn. Bhd.,* No. 2:21-cv-09009-ODW(ASx), 2022 WL 1423223, at *2 (C. D. Cal., 2022). This is not the same standard that a plaintiff must overcome on a 12(b)(6) motion. A court may grant such a dismissal under 12(b)(6) only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

Complaints containing similar, and in most cases, even *less* detail than Deckers' allegations here have survived 12(b)(6) motions to dismiss. *See e.g. Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2015 WL 476287 *4 (C.D.

9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Cal. Feb. 5, 2015) (court held that plaintiffs had sufficiently alleged trade dress of their product packaging where complaint contained allegations that trade dress had "developed and maintained substantial secondary meaning in [the NUTRIBULLET packaging] through its spending of several hundred million dollars on advertising and promotion… "and that such advertising and promotion "[had] made the primary significance of Homeland's trade dress as an identification of the source of the NUTRIBULLET, rather than identifying the NUTRIBULLET itself in the mind's [sic] of the public."); *DocMagic, Inc. v. Ellie Mae, Inc*., 745 F. Supp. 2d 1119, 1140 (N.D. Cal. 2010) (where court found allegations that trade dress had acquired secondary meaning sufficient where DocMagic alleged that "its use of this  trade dress was longstanding and exclusive, that it ha[d] been used consistently on DocMagic's audit reports, and that users of the re-branded services knew that those services were being provided by DocMagic based on this trade dress."); *Glassybaby, LLC v. Provide Gifts, Inc*., 2011 WL 2218583, *2 (W.D. Wash. June 6, 2011) (court found that allegations were sufficient with respect to secondary meaning where plaintiff alleged that the votive holders had gained distinctiveness through "widespread coverage in print and television journalism, extensive marketing and promotion, and appearances on national broadcast television and radio programs."); *Calyx Techs., Inc. v. Ellie Mae, Inc*., 2004 WL 2075446, *2-3 (N.D. Cal. Sept. 3, 2004) (court held that plaintiff sufficiently pled secondary meaning where the complaint included allegations that products bearing the trade dress were recognized as products by plaintiff, and included allegations of advertising expenditures, critical acclaim and widespread use of plaintiff's product).

Here, as discussed above, Deckers has sufficiently alleged facts supporting secondary meaning alleging that it has sold millions of dollars of UGG® Tasman, the embodiment of the Tasman Trade Dress; that the Tasman Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional

materials as well as in various trade publications; the UGG® Tasman has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman and has been featured in many magazines nationwide and internationally; and that Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tasman Trade Dress. FAC ¶ 10-16, 28-32. Furthermore, during discovery Deckers will likely obtain additional evidence of Costco's deliberate copying of the Tasman Trade Dress, which is important not only to secondary meaning, but also to confusion and damages. Deckers will now address, and correct, three legal arguments Costco has made.

First, Costco's argument regarding the deliberate copying of a trade dress or an "aesthetically appealing design" are convenient semantics which are, at a minimum, irrelevant at the pleading stage. As the Ninth Circuit recently held in *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214-5 (9th Cir. 2023), "[a]s we have recently reiterated, '[p]roof of copying strongly supports an inference of secondary meaning.'" Citing *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961-2 (9th Cir. 2022). In *Trendily*, which involved product design (pieces of furniture), the Ninth Circuit upheld the District Court's ruling after a bench trial that defendant's intentional copying of the plaintiff's designs strongly supported an inference of secondary meaning. *Id.* at 1210-11. In doing so, it rejected an argument like the one Costco is currently making in its motion to dismiss - that the copying must be directed to "poach its competitor's superior reputation." ECF No. 25 pg. 23. As the Ninth Circuit explained in *Trendily*, "[t]hough some circuits have adopted ... an intent to confuse requirement, we have not done so. Accordingly, under our precedent, Trendily's clear intent to copy nonfunctional features of JSC Pieces supports a strong inference of secondary meaning" *Id.* at 1215, citing *P & P Imports*, 46 F.4th at 962.[7]

---

[7] Examples of cases applying these principles to situations involving footwear are *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018) and *Vans v. Walmart*, 2023 WL 6922833 *29 (CD Cal. Oct. 11, 2023)

1    It should be noted that in *Trendily* the Ninth Circuit didn't focus on some

2    "aesthetically pleasing" argument which Costco has manufactured, and which requires

3    a plaintiff to disprove a defendants stated *mens rea* (every defendant is going to say

4    the copying was for aesthetic purposes). Rather, it focused on the facts – Trendily's

5    owner saw the designs before he copied them, likely understood the plaintiff's market

6    share, ordered his factory to make copies, and proceeded to offer these copies to

7    retailers. *Id*. at 1214-15. Based on these facts, the Ninth Circuit concluded that

8    "'[t]here is no logical reason for the precise copying' of the JSC Pieces other than to

9    capitalize on JSC's good will." *Id*., citing *Audio Fid*., 283 F.2d at 558.

10    The legal construct Costco has urged upon this Court is not the law in the Ninth

11    Circuit. Plaintiff has plead that "as evidenced by Defendant's close copying of the

12    UGG® Tasman, Defendant has acted in bad faith and Defendant's unlawful acts have

13    misled and confused, and were intended to cause confusion, or to cause mistake, or to

14    deceive consumers as to the affiliation, connection, or association of the Accused

15    Product with Deckers, and/or the origin, sponsorship, or approval of the Accused

16    Product by Deckers." FAC ¶23. Further, that "Defendant [sic] are competitors of

17    Deckers and Defendant introduced Accused Products into the stream of commerce in

18    an effort to exploit Deckers' goodwill and the reputation of the UGG® Tasman." FAC

19    ¶33. Plaintiff does not have to allege, as Costco suggests, that "Defendant did not

20    copy the Tasman because it is an aesthetically pleasing design." [8]

21    _____

22    [8] Defendant's reliance on *Walmart* is misplaced because, on a motion for summary

23    judgement, the court did not find that evidence of copying is not relevant to secondary

      meaning; rather for purposes of summary judgment it was insufficient to establish the

24    non-existence of a genuine dispute regarding secondary meaning. *Deckers Outdoor*

      *Corporation v. Wal-Mart Stores, Inc.*, No. 2:20-cv-09521-FLA(Ex), 2024 WL

25    2208099, at *10 (C.D. Cal. 2024). Second, Defendant's argument overlooks that

26    Deckers *has* alleged that Costco deliberately copied the Tasman Trade Dress with the

      intent to take advantage of Deckers' reputation. *See* FAC ¶ 19, 33 ("[…] Defendant are

27    [sic] competitors of Deckers and Defendant introduced Accused Products into the

      stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the

28    UGG® Tasman"). Third, the *Walmart* MSJ was fully briefed in March of 2022, prior

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Second, Defendant's argument regarding "look-for" advertising is equally flawed and is at odds with the view adopted by the Ninth Circuit which has repeatedly said "image advertising—advertising that feature[s] in some way the trade dress itself—supports an inference of secondary meaning, even if the advertisement does not explicitly urge[] the customer to 'look for' the . . . claimed elements of [the] trade dress." *Vital Pharms. Inc. v. Monster Energy Co*, 472 F. Supp. 3d 1237, 1258 (S.D. Fla. 2020) (citing *Sunburst Prod., Inc. v. Derrick Law Co*., 922 F.2d 845, 845 (9th Cir. 1991)); *Paramount Farms Int'l LLC*, 2012 WL 5974169, at *7 (C.D. Cal. Nov. 28, 2012) ("Significantly, all of these commercials contain elements to educate viewers about the Claimed Trade Dress. At the close of each commercial, Plaintiff's pistachio package emerges from a pistachio shell."); *Givenchy S.A. v. BCBG Max Azria Grp., Inc*., 2012 WL 3072327, at *5 (C.D. Cal. Apr. 25, 2012) ("These advertisements portray ... the handbags, with the design features prominently visible ... and the word 'Givenchy.' Thus, these advertisements appear to endeavor to reinforce the connection consumers draw between the design features of the handbags and its source— Givenchy."); *see also Adidas-Salomon AG v. Target Corp*., 228 F. Supp. 2d 1192, 1208 (D. Or. 2002) ("Trade dress can be recognizable without advertising specifically telling a consumer to look for it.").

Consequently, while "look for" advertising can be probative, that is not the test. As the Ninth Circuit recently instructed in *Trendily*, a trade dress can be recognizable without explicitly instructing consumers to "look for" it. *Trendily* at 1216.[9] Rather,

---

to the Ninth Circuit's decisions in *P&P Imports* and *Trendily*. Fourth, to the extent the district court's ruling in *Walmart* conflicts with the Ninth Circuit's ruling in *P&P Imports* and *Trendily*, it must be rejected.

[9] "The Pieces were also advertised: they were prominently displayed at trade shows; were featured in various retailers' magazines, social media, and email advertisements; and were the subject of numerous presentations Jason Scott made to customers at retail stores, which were advertised beforehand under JSC's mark and with photographs of the furniture."

the probative value of marketing and advertising is largely dependent on its

magnitude, quality, and whether the product in question is depicted.  Under Costco's

skewed theory, $100 million spent by Deckers on marketing depicting the UGG®

Tasman would be wholly irrelevant; whereas a single advertisement in a high school

yearbook touting the UGG® Tasman's "raised prominent seam on the front part of the

upper running longitudinally down the center of the upper" would be probative of

secondary meaning.[10]  As the Court in *Vital Farms* observed – Costco's argument is

not only contrary to Ninth Circuit authority, but is also "appears to be at odds with

what we know about human cognitive behavior." 472 F. Supp. 3d at 1258.

Third, Costco's argument that an *Eveready* likelihood of confusion survey is

irrelevant to secondary meaning is simply wrong. As is well established and no

surprise to anyone familiar with trademark law, *Eveready* surveys are relevant to a

finding of secondary meaning. McCarthy § 15:11 ("If there is reliable evidence of

actual customer confusion, then it follows logically that there must also be some

secondary meaning in the senior user's designation. If people were not aware of the

trademark significance of the senior mark, how could they be confused as to source or

affiliation?"); *American Scientific Chemical v. American Hosp. Supply*, 690 F.2d 791,

793 (9th Cir. 1982); (Actual confusion is an indicium of secondary meaning.); *Adray

v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) (error not to list actual confusion

amongst the factors jury can consider in determining the existence of secondary

meaning.); *Audemars Piguet v. Swiss Watch Intl.*, 46 FS3d 255, 277 (SDNY 2014)

---

[10] None of the cases relied on by Defendant deal with this issue on a 12(b)(6) motion.
*See Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1179–81
(N.D. Cal. 2007) (discussing the sufficiency of evidence supporting secondary
meaning on a motion for summary judgment); *see also First Brands Corp. v. Fred
Meyer, Inc.*, 809 F.2d 1378 (9th Cir.1987) (discussing the sufficiency of evidence
supporting secondary meaning on a motion for preliminary injunction). In contrast,
recently in *Mosaic Brands, Inc. v. Ridge Wallet LLC*, the court found that plaintiff was
not required to plead facts asserting look-for advertising. No. 220CV04556ABJCX,
2021 WL 922074, at *5, fn.1 (C.D. Cal. Jan. 7, 2021).

(Survey showing likelihood of confusion with the trade dress of plaintiff watch was also evidentiary support for secondary meaning); *Parks v. Tyson Foods*, 863 F3d 220, 233 (3d Cir. 2017) ("Even though [an *Eveready*] survey design is most helpful for illustrating likelihood of confusion, it can also indicate secondary meaning by showing a high degree of familiarity with the senior mark."). Indeed, Ninth Circuit Model Jury Instruction 15.11 provides: "[w]hen you are determining whether [a product] has acquired a secondary meaning, consider the following factors: … (7) Actual Confusion. Whether the defendant's use of the plaintiff's trademark has led to actual confusion among a significant number of consumers."

The survey conducted by Dr. Franklyn in *Deckers v. Last Brand*, *Inc.* used the following test stimuli (the accused product in that case), which is noticeably like the knockoffs being sold by Costco:

   

    ***Last Brand, Inc.***        ***Costco***

It is reasonable to conclude that the results (35% confusion) would be the same if the *Last Brand* survey respondents viewed the Costco knockoff, and that these results would be indicative of secondary meaning for the simple reason that the respondents would first have to be aware of the UGG® Tasman in order to be confused.

As with their prior arguments, Costco has surgically removed "sound bites" from inapposite and factually differing cases, distorted them out of context, and argued that they somehow apply to the present situation as a general rule of law. To start with, while surveys may provide evidence of secondary meaning, such evidence is not required. *See, e.g., Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001); *Benefit Cosmetics v. Elf Cosmetics*, 2024 WL 5135604 at *13.

(E.l.f.'s assertion that lack of a secondary meaning survey "warrants an adverse inference" is unavailing.  There is no controlling Ninth Circuit authority for this position; instead, the Ninth Circuit repeatedly has held that "direct evidence of secondary meaning—such as ... survey evidence showing end-consumer recognition— ... is not a requirement.") (citing *Jason Scott Collection v. Trendily*, 68 F.4th at 1217).  Furthermore, the extent to which Costco is willing to engage in legal gymnastics with this Court is evidenced by the cases it has cited concerning surveys. *Audio-Technica* involved a motion for preliminary injunction (2022 WL 1423223, at *2 (C. D. Cal., 2022)), as did *Cairns* (24 F. Supp. 2d 1013 (C.D. Cal. 1998)). *Levi Strauss* involved an appeal of judgment issued after a bench trial (778 F.2d 1352, 1355 (9th Cir. 1985)), and *Allstate Ins. Co.* involved a bench trial for a preliminary injunction (No. CV-16–6108-SJO(AGRx), 2017 WL 6550669 (C.D. Cal. Dec. 22, 2017)). None of these rulings involved a Motion to Dismiss pursuant to FRCP 12(b)(6). Neither *Audio-Technica* or *Cairns* held that the "failure to *allege* a favorable survey supports 'an inference that the results of such a survey would be unfavorable.'"[11] That is not the law.  A plaintiff in a trade dress case does not have to allege that it conducted a secondary meaning survey to survive a Rule 12(b)(6) motion[12].  A plaintiff in a trade dress case does not have to conduct a secondary meaning survey to avoid an adverse inference at the pleading or any other stage of proceedings. *Benefit Cosmetics*, 2024 WL 5135604 at *13; *Jason Scott Collection*, 68

---

[11]

| 11 | way of demonstrating secondary meaning"); *id.* (failure to allege a favorable survey |
| 12 | supports "an inference that the results of such a survey would be unfavorable.") |

(ECF No. 25, pg. 25)

[12] As this Court is aware, any surveys conducted by either party regarding the Accused Product in this case will likely be disclosed as part of an expert report at the time of the cutoff mandated by this Court in its Scheduling Order.

F.4th at 1217. Rather, surveys are one type of evidence that *can* be used to support a finding of secondary meaning.[13]

Even without the allegations regarding the background of the UGG® brand and its products, the FAC sufficiently pleads that the Tasman Trade Dress has achieved secondary meaning. *See* FAC ¶ 10-16, 28-32. And if Defendant means to argue that there is no secondary meaning because consumers only associate the Tasman Trade Dress with Plaintiff due to the UGG® trademark's place on the UGG® Tasman, that is wholly improper on a 12(b)(6) motion. Deckers is not required to *prove* that secondary meaning has actually been achieved, it is only required to generally plead secondary meaning for purposes of defeating a motion to dismiss. *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 2021 WL 922074, at *4; *see also Dean v. Cortes*, Case No. 2:18-cv-02335-CAS-(JPRx), 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) (citing *Spirit Clothing Co.*, Case No. 2:13-cv-02203-RGK-(PJWx), 2013 WL 12144107 at *3 (C.D. Cal. July 23, 2013); *Sugarfina, Inc. v. Sweet Pete's LLC*, Case No. 2:17-cv-4456-RSWL-(JEMx), 2017 WL 4271133, at *5 (C.D. Cal. Sept. 25, 2017). As discussed above, Deckers has more than adequately alleged that its Tasman Trade Dress has achieved secondary meaning among consumers. "[W]hether the alleged trade dress has actually acquired secondary meaning is a question of fact for another day. For purposes of a Rule 12(b)(6) analysis, secondary meaning is adequately alleged." *Brian Lichtenberg, LLC v. Alex & Chloe, Inc*., 2014 WL 585436 (CD Cal. Feb. 13, 2014) (citing *Clicks Billiards*, 251 F.3d at 1262).

## 2. Deckers Has Not Abandoned the UGG® Tasman or the Tasman Trade Dress

---

[13] Finally, it is altogether confusing and unclear how the United States Patent and Trademark Office's (the "USPTO") rejection of two applications in 2015 for registration of trade dress that were not the Tasman Trade Dress are relevant to whether Deckers has sufficiently alleged secondary meaning in the Tasman Trade Dress.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Costco's name-change discussion is a further example of Costco's willingness to throw spaghetti against the wall in the hope that something will stick; even if it means making arguments to this Court that are unquestionably contrary to the law. It is well established that consumers do not need to know the name of the source for secondary meaning to exist. As the Ninth Circuit recently instructed in *P&P Imports*, there are "long-established precedents requiring association with only a single—even anonymous—source." 46 F. 4th at 960.[14] That single source, however, need not be known by name by consumers. s*ee Two Pesos*, 505 U.S. 763 (1992); *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1221 (2d Cir.1987). There is nothing new or earth shattering about the "[s]ingle, albeit anonymous" Rule, all courts follow it. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §15:8 (2025 ed). Finally, Deckers has alleged *trade dress* infringement of the Tasman Trade Dress – not trademark infringement of the "Tasman" name. The products sold under the name UGG® Tasman and UGG® Tasman II are virtually identical and *both* embody the Tasman Trade Dress. As Juliet famously mused in *Romeo and Juliet*, "[w]hat's in a name? That which we call a rose by any other name would smell as sweet." Just like Juliet's proverbial rose, the addition of "II" to the name "Tasman" does not change the inherent nature of the UGG® product – which continues to be the embodiment of the Tasman Trade Dress regardless of what it is called.

### C. Deckers' Unfair Competition Claims (Counts III and IV) Are Sufficiently Pled

Defendant argues that because Deckers allegedly failed to adequately plead its trade dress infringement claims, the Court should dismiss Deckers' unfair competition

---

[14] citing *Maljack Prods. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996) ("[A] showing of secondary meaning only requires proof that the public associates the [mark] with a single source, even if that source is anonymous."); *Bentley v. Sunset House Distrib. Corp.*, 359 F.2d 140, 147 (9th Cir. 1966) ("To show that some secondary meaning existed, it was necessary for Bentley to establish that the public ... regard[s] its product as emanating ... from a single, though anonymous maker.")

claims as well. As discussed above, Deckers has sufficiently pled trade dress infringement in Counts I and II, thus, for the same reasons, Deckers' claims for unfair competition in Counts III and IV do not fail.

### D. Deckers Attorney's Fees allegations in Count IV should not be dismissed

Plaintiff is only seeking fees pursuant to the Lanham Act, 15 U.S.C. §1117. Plaintiff is not seeking fees under California common law.

## V.  <u>DECKERS SHOULD BE GRANTED LEAVE TO AMEND</u>

If this Court gives any credence to Defendant's arguments, Deckers should be granted leave to amend. Leave to amend should be "freely given[n]" unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *Hart v. Larson*, 232 F. Supp. 3d 1128, 1141 (S.D. Cal. 2017); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Because Defendant has made no showing that any perceived deficiencies in the FAC could not be cured by amendment, in the unlikely event Defendant prevails on its Motion, leave to amend should be granted. *John Lonberg v. City of Riverside*, 300 F. Supp. 945 (2004).

## VI.  <u>CONCLUSION</u>

For the reasons given above, Deckers respectfully requests that this Court deny Defendant's FRCP 12(b)(6) motion in its entirety.

Dated:  August 20, 2025           BLAKELY LAW GROUP


By:    */s/ Jamie Fountain*_____
          Brent H. Blakely
          Jamie Fountain
          ***Attorneys for Plaintiff***
          ***Deckers Outdoor Corporation***

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Deckers Outdoor Corporation, certifies that this brief contains 6,394 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated _____ [date].

Counsel relies on the word count of the word-processing application used to prepare the brief.


Dated: August 20, 2025                BLAKELY LAW GROUP


                                      By:    /s/ Jamie Fountain_____
                                             Brent H. Blakely
                                             Jamie Fountain
                                             *Attorneys for Plaintiff*
                                             *Deckers Outdoor Corporation*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**