Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Meredith L. Williams (State Bar No. 292888)
mwilliams@rutan.com
Sarah Van Buiten (State Bar No. 324665)
svanbuiten@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION, a Washington Corporation; and DOES 1-10, inclusive,<br><br>  Defendant. | Case No. 2:25-cv-04174-MCS-AGR<br><br>Judge: The Hon. Mark C. Scarsi<br><br>**DEFENDANT COSTCO WHOLESALE CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Hearing:<br>Date: September 15, 2025<br>Time: 9:00 a.m.<br>Ctrm: 7C<br><br>Date Action Filed: May 9, 2025<br>Trial Date: Not set |

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-1-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. RELEVANT FACTS RELIED ON BY DECKERS ...........................................1

III. DECKERS INCORRECTLY ARGUES THAT THE FAC REQUIRES NO SUBSTANTIVE FACTS TO SURVIVE A MOTION TO DISMISS ..................................................................................2

IV. DECKERS' CONCLUSORY ALLEGATIONS LACK FACTS RENDERING SECONDARY MEANING PLAUSIBLE ...........................3

    1. Deckers' Bare Legal Conclusions and Meaningless Qualifiers Cannot Support Secondary Meaning ........................3

    2. Deckers Could Plead Non-Confidential Sales Figures, Image Advertising, or a Secondary Meaning Survey, But Does Not ......................................................5

    3. Deckers Does Not Allege Facts Relied On Elsewhere To Deny A Motion To Dismiss, Including Deliberate Copying ......................................................6

    4. Deckers Abandoned UCL Attorneys' Fees and the Tasman, Changing Trade Dress Elements for the "Tasman II" ...............................................................................9

V. CONCLUSION ...................................................................................................9

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-i-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adidas-Salomon AG v. Target Corp.*,
  228 F. Supp. 2d 1192 (D. Or. 2002) .................................................................. 5

*Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) .............................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 2

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ............................................................................ 8

*Daniels v. Specialized Loan Servicing, LLC*,
  2023 WL 4291651 (C.D. Cal. Apr. 20, 2023) .................................................... 3

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  2015 WL 12731929 (C.D. Cal. May 8, 2015) .................................................... 8

*Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*,
  No. 2:20-CV-09521-FLA (EX), 2024 WL 2208099 (C.D. Cal. Apr. 9, 2024) 1, 6

*First Brands Corp v. Fred Meyer, Inc.*,
  809 F.2d 1378 (9th Cir. 1987) ............................................................................ 6

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) .............................................................................. 8

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
  No. CV 10-8394-GHK SHX, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012) ...... 5

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
  2015 WL 476287 (C.D. Cal. Feb. 5, 2015) ..................................................... 7, 8

*Hot Focus Inc. v. Best Accessory Grp. LLC*,
  2022 WL 3013032 (C.D. Cal. June 23, 2022) ................................................ 3, 8

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 550 (2024) ................ 6, 8

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-ii-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

Case 2:25-cv-04174-MCS-AGR   Document 30   Filed 08/27/25   Page 4 of 15   Page ID #:1419

**Page(s)**

**FEDERAL CASES (CONT'D)**

*Kittrich Corp. v. United Indus. Corp.*,
 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) ...................................................... 8

*P & P Imps. LLC v. Johnson Enters., LLC*,
 46 F.4th 953 (9th Cir. 2022) .................................................................................. 8

*S&B Filters, Inc. v. ETN Cap., LLC*,
 2022 WL 2204144 (C.D. Cal. Mar. 9, 2022) ......................................................... 8

*Solid Host, NL v. Namecheap, Inc.*,
 652 F.Supp.2d 1092 (C.D. Cal. 2009) .................................................................. 7

*Star Athletica, LLC, v. Varsity Brands, Inc.*,
 137 S. Ct. 1002 (2017) ........................................................................................... 1

*Vision Sports, Inc. v. Melville Corp.*,
 888 F.2d 609 (9th Cir. 1989) ................................................................................. 8

*Wal-Mart Stores, Inc. v. Samara Bros.*,
 529 U.S. 205 (2000) ...................................................................................... 1, 7, 9

**RULES**

Federal Rules of Civil Procedure
 rule 12(b)(6) .......................................................................................................... 2

**NON-PERIODICAL PUBLICATIONS**

1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION section 8:7 (5th ed.)
 ............................................................................................................................... 4

U.S. Copyright Office, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES section
 924.2 (3d ed. 2021) ............................................................................................... 1

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-iii-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

## I. INTRODUCTION

Deckers is notorious for attempting to extend intellectual property protection to its shoes based on alleged unregistered trade dress. As Deckers is well aware, the Supreme Court and courts in this district discourage such "abuse of trade dress law,"[1] as the proper vehicle to obtain IP rights over footwear is *registering* trade dress or a design patent.[2] Of course, registering IP protection requires USPTO examination. Registering trade dress, in particular, requires a *showing* that the footwear has attained secondary meaning, which even Deckers' most famous UGG® boot lacked.

Knowing it cannot make the proper secondary meaning showing, Deckers circumvents these established processes through filing hundreds of federal lawsuits (about 200 in the Central District) for alleged unregistered trade dress infringement, recycling boilerplate allegations across ten different shoes. Deckers thus believes it can escape any scrutiny concerning whether its footwear warrants IP protection—at least through summary judgment and/or coerced settlement with "competitors" like Costco, Wal-Mart, and hundreds of others—arguing that its conclusory, factually bare secondary meaning allegations survive a 12(b)(6) motion. Deckers is incorrect, and the Court should not countenance its attempt to avoid scrutiny on secondary meaning.

## II. RELEVANT FACTS RELIED ON BY DECKERS

Deckers' scant nine lines on "factual background" (Opp. 3:11-19) state it is "one of the biggest footwear companies in the United States," with brands like UGG®, founded 1979, and Costco sells "a wide range of products" through (member-only) retail stores and online at www.costco.com. (*Id.*, citing FAC, ¶¶8-9, 18, 19, 21.) Deckers mentions other conclusory allegations in passing (Section IV.1, *infra*; Opp. 3:11-19, 11:1-6, 12:11-20, citing FAC, ¶¶8-16, 18, 19, 21, 23, 28-33), but abandons

---

[1] *See* Mot. 15 (*Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, No. 2:20-CV-09521-FLA (EX), 2024 WL 2208099, at *10 (C.D. Cal. Apr. 9, 2024) (discussing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212–13 (2000)).

[2] Per *Samara Bros.*, copyright protection is also available for original designs, but the design of a shoe itself is a useful article, not copyrightable. U.S. Copyright Office, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 924.2 (3d ed. 2021) (discussing *Star Athletica, LLC, v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017)).

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-1-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

other allegations (e.g. inherent distinctiveness) for reasons noted in the Motion. Decker's bare-bones "factual background" section, traditionally where a plaintiff recites the facts alleged in the complaint that state a claim for relief, speaks volumes.

Notably, while Deckers laments that Costco seeks judicial notice of "extrinsic evidence" relied on in the FAC (e.g. five articles Deckers directly quotes, Dkt. 26, RJN Exs. 16-20) or otherwise properly noticeable (e.g. Deckers' other complaints, *id.*, Exs. 11-15), Deckers argues facts in opposition beyond the FAC:

- In its first paragraph, Deckers argues it "sued Costco in 2023 for selling knockoffs of its famous UGG® Classic Ultra Mini Boot" (Opp. 1:6-8), i.e. a prior case not alleged in the FAC (settled by confidential agreement without admission of liability).
- In the second, Deckers argues that "customers and the media have frequently referred to Costco's lookalike products as low-cost 'look alike' or 'copies' of Deckers' distinctive designs." (Opp. 1:18-20).

On both points, Deckers does not cite the FAC, as there is no such allegation.

## III. DECKERS INCORRECTLY ARGUES THAT THE FAC REQUIRES NO SUBSTANTIVE FACTS TO SURVIVE A MOTION TO DISMISS

Unable to allege more than threadbare conclusions, Deckers misstates the legal standard, ignoring that: (i) the *Twombly*/*Iqbal* pleading standard requires sufficient fact allegations, not bald conclusions; (ii) courts routinely adjudicate the sufficiency of secondary meaning allegations at the pleading stage; and (iii) facts subject to judicial notice and incorporation-by-reference may be considered per Rule 12(b)(6).

Deckers' arguments misapprehend the law; alleging some plausible facts does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "[w]hether a mark has obtained secondary meaning is question of fact to be determined by a jury" (Opp. 2:11-13, citing *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006)[3]

---

[3] Deckers also cites two decisions by this Court not addressing secondary meaning.

(denying summary judgment), on a motion to dismiss, the Court generally accepts the factual matter alleged as true and decides whether those facts suffice to plead secondary meaning, as shown by the plethora of cases cited in the Motion. (Mot. at 9:3-16; *see also, Hot Focus Inc. v. Best Accessory Grp. LLC*, 2022 WL 3013032, at *7-8 (C.D. Cal. June 23, 2022) (secondary meaning presents "question of fact," but plaintiff failed to allege sufficient facts on relevant factors).) Hence, the fact-intensive nature of the secondary meaning inquiry does not exempt Deckers from pleading facts to make it plausible.

The Court may also consider judicially noticed materials without error, per Costco's concurrently-filed Reply ISO its RJN. In any event, the Court need not rely on contested exhibits to grant the Motion, as Deckers' deficient factual allegations do not plausibly allege secondary meaning.

## IV. **DECKERS' CONCLUSORY ALLEGATIONS LACK FACTS RENDERING SECONDARY MEANING PLAUSIBLE**

### 1. **Deckers' Bare Legal Conclusions and Meaningless Qualifiers Cannot Support Secondary Meaning.**

Instead of pleading facts on secondary meaning, i.e. the "mental association by a substantial segment of consumers… between the alleged trade dress and a single source" (Mot. 7:16-8:6 [citation omitted]), Deckers uses patently conclusory or otherwise meaningless general qualifiers, i.e.:

**(1)** Deckers spent "substantial time, effort, and money in designing, developing, advertising, promoting, and marketing" Tasmans, and as a result, sold millions of dollars of Tasmans (Opp. 6:20-22, citing FAC, ¶13);

- The FAC is devoid of factual allegations that would supply meaning to the otherwise meaningless qualifier "substantial"; further, Deckers refuses to elaborate on its sales, perhaps only a few hundred pairs per year (Mot. 9-10).

---

(Opp. at 2, n.2; *Daniels v. Specialized Loan Servicing, LLC*, 2023 WL 4291651, at *3 (C.D. Cal. Apr. 20, 2023) (contract-related claims adequately pled).)

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-3-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

1  **(2)** "[A] large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman and [being] featured in many magazines nationwide and internationally" (Opp. 11:1-6, citing FAC, ¶10-16, 28-32);

- Deckers cites alleged "unsolicited mediation attention," but demands that the Court not consider the five articles actually cited in the FAC, which raise serious doubt about secondary meaning (Mot., *e.g.* p. 11, n. 3).

**(3)** "Deckers spends millions of dollars annually on advertising of UGG® products, including" Tasmans (Opp. 11:1-6, citing FAC, ¶¶10-16, 28-32);

- This allegation is not specific to Tasmans, allowing the reasonable inference that little to no UGG®-brand advertising is specific to that shoe (Mot., pp. 2-3, 5, 9-12, etc.).

**(4)** Coscto's "close copying of the UGG® Tasman," purportedly "to exploit Deckers' goodwill" (Opp. 12:11-20, citing FAC, ¶¶23, 33);

- This allegation relies solely on the alleged visual similarity between the shoes, without any facts to support Deckers' legal conclusion of intentional copying to trade off any claimed trade dress (Mot., pp. 8-9, 14-16, n.4).

Deckers' allegations thus feature bare, general conclusions, not facts (*see, e.g.*, Opp. pp. 6-7). Indeed, allegations that Deckers has "substantial" advertising/sales, received "widespread" media coverage, or even faced "deliberate copying" of the Tasman design by others are not sufficient to support a claim of secondary meaning.

Indeed, the Tasman is nowhere near the iconic footwear designs registered by the USPTO, e.g. Louboutin's red sole or Adidas's three-stripe trade dress. 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:7 (5th ed.). In contrast to these registered footwear designs, Deckers has not even attempted to register the trade dress for any shoes after its applications to register its most famous shoe's trade dress were rejected. (Mot. 12-14; RJN Exs. 5-8.)

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-4-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

Deckers concededly has made no attempt to register its Tasman trade dress, and so never made the factual showing on secondary meaning required. Nor has it ever, in hundreds of cases filed to date, proved any of its shoes' trade dress has secondary meaning. Deckers' failure to show secondary meaning for any of its products, in any proceeding, in any forum, highlights the importance of factual allegations rendering secondary meaning plausible, which it does not have.

### 2. Deckers Could Plead Non-Confidential Sales Figures, Image Advertising, or a Secondary Meaning Survey, But Does Not.

Deckers nonsensically asserts its Tasman sales figures are "confidential," requiring filing under seal. (Opp. 8, n. 6.) Deckers does not explain why sales figures (units sold or revenue, as opposed to profits), are confidential. The very cases Deckers cites make clear that general sales figures are not confidential and should be provided to support secondary meaning. *See Givenchy S.A. v. BCBG Max Azria Grp., Inc.* ("*Givenchy*"), No. CV 10-8394-GHK SHX, 2012 WL 3072327, at *5, n.7 (C.D. Cal. Apr. 25, 2012) (trade dress generated "in excess of $20 millions of revenue… for Givenchy since 2006."); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 752 (9th Cir. 2018) (adidas sold "more than 40 million pairs" of Stan Smith shoes, earns "several hundred million dollars in annual domestic sales of [three-stripe] products"). A plaintiff who bears the burden of plausibly alleging secondary meaning cannot hide behind a bare assertion of "confidentiality" as to the amount and exclusivity of sales (particularly unit volumes), which is the lynch pin of secondary meaning.

Likewise, Deckers' arguments as to its failure to allege *any* image advertising miss the mark, as it cites cases in which a plaintiff did image advertising without "look-for" callouts but ensured claimed design features were "prominently visible." (*Cf.* Opp. 13-14, quoting *Givenchy*, at *5; *see also id.*, discussing *Adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1209 (D. Or. 2002) ("what type of image advertising is required" not critical, as "adidas has done some image advertising."). Deckers does not point to a single allegation in the FAC as to any advertising showing

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-5-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

the Tasman, whether "look-for" ads or just image advertising showing Tasmans at all, let alone in a way fostering association with trade dress features. The complete absence of such allegations distinguishes Deckers' FAC from its cited authorities, including the Ninth Circuit case misleadingly cited to argue trade dress recognition does not require "explicitly instructing consumers to 'look for' it" (Opp. 13:12, citing *Jason Scott Collection, Inc. v. Trendily Furniture, LLC,* 68 F.4th 1203, 1216 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 550 (2024).) To be clear, that *Trendily* case does not mention "look-for" advertising at all, let alone indicate it is unnecessary. Costco's Motion directs the Court to the correct Ninth Circuit authority requiring "look-for" or at least "image" advertising per *First Brands* (Mot. 3, 10-11; 809 F.2d 1378 (9th Cir.1987)). A handful of out-of-circuit decisions not requiring "look-for" advertising do not help where Deckers failed to allege image advertising of any kind.

Finally, Deckers doubles down on its inapposite "survey from a prior lawsuit" (Opp. 6:25-26), i.e. a not-yet-admitted[4] survey from a *pending* case that concededly does not test for secondary meaning. Deckers ignores the critical distinction between an *Eveready* survey and evidence of actual confusion, only the latter of which is probative of secondary meaning. That distinction cannot be overlooked, because an *Eveready* survey is not direct evidence of actual confusion, and is unavoidably leading on secondary meaning. (Mot. 16, RJN Ex. 21: "What company do you believe makes or puts out these slippers?" [assumes exclusivity]). In short, even if Deckers' survey is ultimately accepted elsewhere, that alleged survey testing for consumer confusion cannot support secondary meaning, at the pleading stage or otherwise.

### 3. Deckers Does Not Allege Facts Relied On Elsewhere To Deny A Motion To Dismiss, Including Deliberate Copying.

Deckers asks this Court to overlook the dearth of factual allegations in the FAC

---

[4] Deckers has never proved secondary meaning in hundreds of cases; its only secondary meaning survey Costco is aware of was stricken "as methodologically flawed." *Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, No. 2:20-CV-09521-FLA (EX), 2024 WL 2208099, at *9 (C.D. Cal. Apr. 9, 2024) (Fluff Yeah).

to plausibly allege secondary meaning for two reasons: (1) plaintiffs have survived dismissal with skimpier factual allegations; and (2) Deckers' bald reference to "close copying" suffices to allege secondary meaning. Neither argument has merit.

First, Deckers' attempt to minimize its own pleading burden lacks merit. (Opp. 7:2-8:2 [arguing no "specific allegation" of secondary meaning is needed, only pleading "generally"].) Deckers' cited case law, however, does not permit its threadbare allegations to pass muster: for example, *Solid Host, NL v. Namecheap, Inc.*, 652 F.Supp.2d 1092, 1108 (C.D. Cal. 2009) was a cybersquatting case dealing with a trademark, *not* unregistered product trade dress. There, the court found allegations sufficient to plead secondary meaning where a hacker purposefully stole a domain including a trademark to profit, raising an inference of distinctiveness. *Id*. at 1107-08. The Court cannot make a similar inference here, both because the FAC lacks concrete facts supporting it, and because it is contrary to the Supreme Court's direction in *Samara Bros* to scrutinize unregistered trade dress to avoid monopoly.

Next, Deckers erroneously claims that complaints with "even *less* detail" have survived dismissal (Opp. 9:26-27), citing, *e.g., Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2015 WL 476287 *4 (C.D. Cal. Feb. 5, 2015). There, however, the court initially denied plaintiff's motion for preliminary injunction for failure to show secondary meaning. 2014 WL 4187982, *8 (C.D. Cal. Aug. 22, 2014) ("Homeland has not pointed to any evidence of the effectiveness of its advertising in creating a secondary meaning for its trade dress other than providing the dollar figure of its overall advertising budget…."). After amendments, the Court considered the sufficiency of the second amended complaint, in which plaintiff supplemented to add facts regarding pervasive marketing of its trade dress; defendant's intent to create a copycat product; and defendant's subsequent use of false, comparative advertising to undermine plaintiff's product. *See* 2014 WL 10122074 (second amended complaint). In denying dismissal, the Court considered one exemplary allegation, concluding: "These allegations are *probably* sufficient, at the pleading stage, to state a claim based

on secondary meaning." 2015 WL 476287, at *4 (italics added). Deckers' cited cases do not vindicate its vaguely-alleged FAC.

Second, Deckers threadbare allegation of "close copying" cannot salvage its inability to plead secondary meaning (Opp. 6:6-15; FAC, ¶23). *See Kittrich Corp. v. United Indus. Corp.*, 2017 WL 10434389, at *6 (C.D. Cal. Oct. 18, 2017) (conclusory allegation that defendants "willfully and intentionally mimicked the EcoSmart trade dress" did not suffice to allege secondary meaning); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) (granting motion to dismiss for failure to allege secondary meaning where "[t]he allegations of intentional copying are[] conclusory"); *S&B Filters, Inc. v. ETN Cap., LLC*, 2022 WL 2204144, at *3 (C.D. Cal. Mar. 9, 2022) (same); *Hot Focus Inc.,* 2022 WL 3013032, at *7-8 (same); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987) (deliberate copying may not be probative of secondary meaning because there are legitimate reasons for competitors to copy non-protectable features).

None of Deckers' cited authority shows otherwise, i.e. that alleged similarities alone permit the Court to assume deliberate copying; instead, all cases cited included additional evidence that the purchasing public associated the trade dress with plaintiff. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 611, 615 (9th Cir. 1989) (affirming preliminary injunction; defendant began selling clothing copying logo months after plaintiff declined to sell to defendant; considered with survey evidence and copycat advertising campaign); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264 (9th Cir. 2001) (secondary meaning evidence defeated summary judgment; defendant's employees sought to copy the look of the alleged pool hall trade dress, and inspected plaintiff's pool hall for that purpose; with survey evidence); *P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961-62 (9th Cir. 2022) (secondary meaning evidence defeated summary judgment where defendant ordered plaintiff's game, sent it to manufacturer, then sold nearly identical game months later with copycat marketing; with survey evidence); *Jason Scott Collection, Inc. v.*

*Trendily Furniture, LLC*, 68 F.4th 1203, 1214-16 (9th Cir. 2023) (at trial, court properly considered conceded copying of direct competitor's furniture pieces as one factor showing secondary meaning, with, *e.g.*, consumer recognition evidence).

No case holds that a conclusory allegation of "close copying," supported solely by alleged visual similarities of two products, suffices to allege secondary meaning at this stage. Otherwise, asserting that a "competitor"[5] copied products per purported similarities would plausibly allege secondary meaning in all instances. It does not, as *Samara Bros.* prohibits such abuse of trade dress law.

### 4. Deckers Abandoned UCL Attorneys' Fees and the Tasman, Changing Trade Dress Elements for the "Tasman II".

Costco noted that Deckers "has only sold a new and different 'Tasman II' since before filing this case" (Mot. 1:4-7), to which Deckers responds that the Tasman and Tasman II "are virtually identical" (Opp. 18:13-15), i.e. not the same. While Deckers frames this transition as a mere "name-change," the core issue is that the shoe itself has changed, specifically in how claimed trade dress elements appear. Deckers' argument that both shoes embody the Tasman Trade Dress is outside the pleadings, and the FAC's failure to identify the Tasman II dooms that shoe's secondary meaning.

Lastly, Deckers concedes it "is not seeking fees under California common law," so the motion to dismiss attorneys fees sought on that UCL claim must be granted.

## V. CONCLUSION

Deckers need not plead *every* fact relevant to secondary meaning, but it cannot avoid pleading *any* facts on this critical issue. Because Deckers fails to plead the requisite facts, its unregistered trade dress does not merit monopoly protection.

---

[5] Costco sells shoes but is not Deckers' "competitor." Costco is a warehouse store selling thousands of items to its members; it does not manufacture shoes or sell through other retailers (as Deckers does). The court need not accept as true conclusory allegations contrary to facts judicially noticed, or indeed, common sense.

Rutan & Tucker, LLP
attorneys at law

2835/033814-0010
22692478.5 a08/27/25

-9-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

| | | |
|---|---|---|
| 1 | Dated: August 27, 2025 | RUTAN & TUCKER, LLP<br>MICHAEL D. ADAMS<br>MEREDITH L. WILLIAMS<br>SARAH VAN BUITEN |
| 2 | | |
| 3 | | |
| 4 | | By: */s/ Meredith L. Williams* |
| 5 | | Meredith L. Williams<br>Attorneys for Defendant<br>COSTCO WHOLESALE<br>CORPORATION |
| 6 | | |

2835/033814-0010
22692478.5 a08/27/25

-10-

DEF. COSTCO WHOLESALE CORP.'S
REPLY ISO MOTION TO DISMISS FAC

Rutan & Tucker, LLP
attorneys at law

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Costco Wholesale Corporation, certifies that this brief contains 2,974 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

_X_ complies with the 3,000-word limit set by the Court's Standing Order (9.d.) dated May 13, 2025 (Dkt. 8).

Counsel relies on the word count of the word-processing application used to prepare the brief.

Dated: August 27, 2025

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
MEREDITH L. WILLIAMS
SARAH VAN BUITEN

By: _____*/s/ Meredith L. Williams*_____
Meredith L. Williams
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION