UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04174-MCS-AGR | Date | September 22, 2025 |
| Title | *Deckers Outdoor Corp. v. Costco Wholesale Corp.* | | |

Present: The Honorable   Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO DISMISS (ECF NO. 25) AND REQUEST FOR JUDICIAL NOTICE (ECF NO. 26)

Defendant Costco Wholesale Corporation filed a motion to dismiss Plaintiff Deckers Outdoor Corporation's First Amended Complaint ("FAC") for failure to state a claim. (Mot., ECF No. 25.) Plaintiff opposed the motion, (Opp'n, ECF No. 28), and Defendant replied, (Reply, ECF No. 30). The Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.   BACKGROUND

According to the operative pleading, Plaintiff designs and markets footwear products under a variety of brand names, including UGG®. (FAC ¶ 5, ECF No. 23.) One of the products Plaintiff sells under the UGG® brand name is the UGG® Tasman, which Plaintiff has sold for "more than 20 years." (*Id.* ¶ 25.) Plaintiff claims Defendant is engaged in the "design, manufacture, importation, distribution, advertisement, marketing, offering for sale, and sale" of a product that infringes upon the UGG® Tasman trade dress. (*Id.* ¶ 17.) According to Plaintiff, Defendant's products "bear confusingly similar reproductions of the Tasman Trade Dress" "in an effort to exploit [Plaintiff's] goodwill and the reputation of the UGG® Tasman." (*Id.*

¶¶ 33–34.) On these allegations and others, Plaintiff asserts claims for (1) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); (2) trade dress infringement under California common law; (3) unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (4) unfair competition under California common law. (*Id.* ¶¶ 24–58.)

## II.   REQUEST FOR JUDICIAL NOTICE

In support of its motion to dismiss, Defendant has requested that the Court take judicial notice of, or deem incorporated by reference, 46 documents, consisting of hundreds of pages of material outside the pleadings. (RJN, ECF No. 26.) These documents include screenshots of website pages, online articles, files from the United States Patent and Trademark Office, copies of complaints and motions to dismiss filed in other cases involving Plaintiff, an expert report from a different litigation, and excerpts from a treatise on trademark and deceptive advertising surveys. (*Id.* at 1–24.) Plaintiff opposes the request. (RJN Opp'n 1–2, ECF No. 29.)

A court may take judicial notice of a fact not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A document may be deemed incorporated by reference into a pleading "if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Defendant first seeks judicial notice of the contents of pages from Plaintiff's website showing the price of various products. (RJN Exs. 1–3A, ECF Nos. 26-1 to -4.) Facts from a party's website can be the proper subject of judicial notice. *See, e.g.*, *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012) (taking notice of undisputed facts on party-affiliated website). However, federal courts "have expressed skepticism" about taking notice of information from websites created and maintained by a party. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (collecting cases). Defendant does not present any argument or information demonstrating that the contents of the webpages are not subject to reasonable dispute. The Court finds that the prices of Plaintiffs' products are not generally known in this district, and that Defendant's website is a source whose accuracy reasonably may be questioned. Accordingly, the Court declines to take judicial notice of the webpages. For the same reasons, the Court also

declines to take judicial notice of the screenshot of Plaintiff's Instagram account. (RJN Ex. 4, ECF No. 26-5.)

Defendant next requests that the Court consider five online articles cited by Plaintiff in the FAC. (RJN Exs. 16–20, ECF Nos. 26-17, -21, -26, -27, -31.) Defendant further asks the Court to take judicial notice of an earlier version of one of the articles, as well as images and advertisements that were displayed on the webpages when defense counsel viewed them. (RJN Exs. 16A–C, 17A–D, 19A–C, 20A–M, ECF Nos. 26-18 to -20, -22 to -25, -28 to -30, and -32 to -44.) Like Plaintiff's websites and Instagram account, Defendant has made no showing that the contents of these webpages and advertisements are not subject to reasonable dispute. Therefore, the Court declines to take judicial notice of these exhibits. However, the Court can consider the five articles cited in the FAC under the incorporation by reference doctrine. (RJN Exs. 16–20.) The FAC cites these five articles as examples of the "large volume of unsolicited media attention" the UGG® Tasman has received. (FAC ¶¶ 11, 29.) Because the FAC references the five articles, which are central to Plaintiff's assertions toward secondary meaning, the only remaining issue is whether Plaintiff questions their authenticity. Plaintiff objects to exhibits 16–20 on the basis that Defendant does not appropriately authenticate them. (RJN Opp'n 9.) The Court agrees with Plaintiff; Defendant's request states the exhibits are "true and correct cop[ies]" of the articles, but it offers no authenticating declaration or other evidence to substantiate that representation. (RJN 10–16); *see* Fed. R. Evid. 901(a). Plaintiff's objection could be sustained, which would suffice to call into question the documents' authenticity. *Marder*, 450 F.3d at 448; *see Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, No. SA CV 15-cv-0736-DOC (DFMx), 2016 WL 6892140, at *23 (C.D. Cal. Nov. 22, 2016) ("Authenticity for incorporation by reference means the same thing as it does in Federal Rule of Evidence 901 . . . ."). Notwithstanding, in the interest of judicial economy, and given the representations that adhere to the request by way of counsel's signature, *see* Fed. R. Civ. P. 11(b), the Court treats the request as if defense counsel had stated under penalty of perjury that exhibits 16–20 are true and correct copies of the articles and overrules Plaintiff's authenticity objection. The Court considers exhibits 16–20.[1]

Defendant next seeks judicial notice of four records from the United States Patent and Trademark Office. (RJN Exs. 5–8, ECF Nos. 26-6 to -9.) "Materials in the online files of the USPTO and other matters of public record are proper subjects

---

[1] The disposition of this motion would not change if the Court refused to consider the articles.

of judicial notice." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). However, these documents are noticeable only for their existence, not for the truth of the assertions contained therein. *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017), *aff'd*, 787 F. App'x 369 (9th Cir. 2019). Defendant goes beyond this limited use and instead relies on these documents to argue Plaintiff's Tasman trade dress has not achieved secondary meaning. (Mot. 12–14.) At the motion to dismiss stage, the only question is whether Plaintiff has adequately pleaded secondary meaning, not whether secondary meaning is ultimately proved. *See Gerritsen*, 112 F. Supp. 3d at 1023 (declining to take judicial notice of documents at the motion to dismiss stage where defendants "confuse[d] [Plaintiff's] obligation to plead plausible claims with her ability to prove those claims"). Accordingly, the Court declines to take judicial notice of the USPTO documents for the purposes for which Defendant offers them.

Defendant next requests that the Court consider a printout of the docket and a motion to dismiss filed in the case *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. 2:15-cv-00769-PSG-SS. (RJN Exs. 9–10, ECF Nos. 26-10 to -11.) Defendant also requests that the Court take judicial notice of five complaints filed by Plaintiff in other civil actions. (RJN Exs. 11–15, ECF Nos. 26-12 to -16.) Regardless of whether these documents are noticeable, the content of filings in other lawsuits is wholly immaterial to whether Plaintiff has sufficiently pleaded its claims in *this lawsuit* to survive a Rule 12(b)(6) motion to dismiss. The Court therefore declines consider these documents. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016).

Finally, Defendant asks the Court to consider an "*Eveready* confusion survey" prepared as part of an expert report in a different lawsuit, *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 3:23-cv-04850-AMO, which Plaintiff relies on in paragraphs 15 and 32 of the FAC. (RJN 23–24; RJN Ex. 21, ECF No. 26-45.) Plaintiff cites the survey in the FAC to demonstrate consumer recognition of the Tasman trade dress, which is "relevant to a finding of secondary meaning." (FAC ¶ 15.) Plaintiff raises no authenticity objection to the survey copy Defendant attached to its motion. (*See* RJN Opp'n 1–10.) The Court therefore deems exhibit 21 incorporated by reference into the FAC. *See Marder*, 450 F.3d at 448. Defendant also asks the Court to consider excerpts of a publication by the American Bar Association from 2022. (RJN 24; RJN Ex. 22, ECF No. 26-46.) Defendant cites this exhibit to support its argument that the Tasman trade dress has not achieved secondary meaning. (*See* Mot. 16.) Since the Court is only determining at this stage whether Plaintiff has adequately pleaded

secondary meaning, the Court need not consider exhibit 22 to resolve the motion. *See Japanese Vill.*, 843 F.3d at 454.

In all, Defendant's Request for Judicial Notice is granted in part and denied in part. The Court deems exhibits 16–21 incorporated by reference into the FAC. The Court declines to consider any of the other documents proffered by Defendant.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### IV. DISCUSSION

#### A. Trade Dress Infringement Claims

Defendant challenges Plaintiff's pleading of its trade dress claims. (Mot. 6–18.) Because the federal and state claims are "substantially congruent" with each other, the Court analyzes them together. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004).

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257

(9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). "To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citing *Disc Golf Ass'n, Inc. v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998)).

Defendant argues Plaintiff failed to allege facts sufficient to establish secondary meaning. (Mot. 6–18.) A trade dress "attains secondary meaning when the purchasing public associates the dress with a particular source." *Clicks Billiards*, 251 F.3d at 1262 (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987)). Factors a court considers in assessing secondary meaning include: (1) whether actual purchasers associate a particular product configuration with a particular source; (2) the degree and manner of the source's advertising; (3) the length and manner of the source's use of the configuration; and (4) whether the source's use of the configuration has been exclusive. *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989). Proof of intentional copying also "strongly supports an inference of secondary meaning." *P&P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (internal quotation marks omitted). "Whether a particular trade dress has acquired secondary meaning is a question of fact." *Clicks Billiards*, 251 F.3d at 1262 (cleaned up).

Under the *Clamp* factors, Plaintiff alleges enough facts to make the secondary meaning of its trade dress "plausible on its face." *Iqbal*, 556 U.S. at 678. The FAC alleges that the UGG© Tasman has received widespread media attention, including use by a number of celebrities and "a large volume of unsolicited media attention." (FAC ¶¶ 10, 29; *see also* RJN Exs. 16–20.) Furthermore, Plaintiff claims that, over the course of 20 years, it has sold "millions of dollars' worth of UGG© Tasman, the embodiment of the Tasman Trade Dress," and a consumer confusion survey showed "approximately thirty-five percent of survey respondents mistakenly believe that a third-party infringing product was authorized or affiliated with Plaintiff."[2]

---

[2] Defendant argues that the survey cited in the FAC did not actually test for secondary meaning and instead only tested for consumer confusion. (Mot. 16–17.) Plaintiff, however, did not claim the survey tested for secondary meaning directly. Instead, Plaintiff pleaded that the survey showed a high level of consumer confusion, which is evidence of secondary meaning. (FAC ¶ 15 ("If there is reliable evidence of actual customer confusion, then it follows logically that there must also be some secondary

(FAC ¶¶ 25, 31–32; *see also* RJN Ex. 21.) Plaintiff also alleges that it spends "millions of dollars annually on advertising of UGG© products, including footwear embodying the Tasman Trade Dress." (FAC ¶ 30.) These allegations, which the Court takes as true for purposes of this motion, raise an inference that actual purchasers associate the trade dress with Plaintiff; that there has been significant degree of advertising, including unsolicited media attention, of products bearing the trade dress; and that Plaintiff has sold products bearing the trade dress for decades. Plaintiff has thus plausibly alleged secondary meaning under the *Clamp* factors. *See Clamp Mfg. Co*, 870 F.2d at 517.

Defendant's arguments to the contrary appear to be focused on the merits of Plaintiff's secondary meaning arguments, rather than the narrower question of whether Plaintiff's allegations are plausible. For example, Defendant disputes the volume of UGG© Tasman shoes Plaintiff has actually sold and argues that the UGG© Tasman trade dress has not achieved secondary meaning because Plaintiff has not engaged in "look-for" advertising. (Mot. 9–11.) These arguments rely almost entirely on extrinsic evidence the Court has declined to consider. Regardless, whether secondary meaning attaches to the claimed trade dress is a question of fact better resolved at summary judgment or trial, not on the pleadings. *See Clicks Billiards*, 251 F.3d at 1262. The Court does not find Defendant's arguments persuasive at this stage.

Defendant urges the Court to follow the lead of *R&A Synergy LLC v. Spanx, Inc.*, No. 2:19-cv-09147-SVW-AS, 2019 WL 4390564, at *7 (C.D. Cal. May 1, 2019), in which the court concluded that allegations that the at-issue product had generated over $5.8 million in revenue and had been "worn by celebrities" was not enough to establish secondary meaning. Plaintiff's allegations here are more specific than those in *R&A Synergy*. Plaintiff has cited specific instances of unsolicited media attention, specific celebrities who have worn the UGG© Tasman, and survey data

---

meaning . . . ." (quoting 2 *McCarthy on Trademarks and Unfair Competition* § 15:11)).) Because "the law clearly establishes that 'actual confusion is an indicium of secondary meaning,'" it is sufficient that the survey only tested for consumer confusion rather than secondary meaning directly, at least at the pleading stage. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1995) (quoting *Am. Sci. Chem. v. Am. Hosp. Supply*, 690 F.2d 791, 793 (9th Cir. 1982)). Defendant also raises arguments about the survey's methodology in order to call its results into question. (*See* Mot. 16–17.) This is an attempt to litigate the merits of the secondary meaning element, and the Court declines to consider it at this stage.

purporting to show consumer confusion. (FAC ¶¶ 10, 29–32; *see also* RJN Exs. 16–20.) Taken together, these allegations plausibly establish secondary meaning.

Because Plaintiff has pleaded enough facts to plausibly allege secondary meaning, the motion to dismiss the trade dress infringement claims is denied.

### B.    Unfair Competition Claims

Defendant argues that Plaintiff's unfair competition claims must be dismissed because they are derivative of the trade dress infringement claims. (Mot. 18–20.) Because the Court has concluded that the trade dress infringement claims are adequately pleaded, the unfair competition claims also survive.

Defendant additionally argues that Plaintiff's request for attorney's fees based on the unfair competition claims should be dismissed because attorney's fees are not recoverable under the UCL. (Mot. 20–21.) Plaintiff responds that it is only seeking fees under the Lanham Act, not the UCL. (Opp'n 19.) This exchange illustrates why the Court requires a thorough prefiling conference of counsel, which might have resolved this dispute, *see Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2013 U.S. Dist. LEXIS 183977, at *2 (C.D. Cal. June 3, 2013) (noting that Local Rule 7-3 "enables the parties to brief the remaining disputes in a thoughtful, concise, and useful manner" (internal quotation marks omitted)), and also why the Court adheres to the position that "a complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law," *Saroya v. Univ. of Pac.*, 503 F. Supp. 3d 986, 1000 (N.D. Cal. 2020); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 130 (1983) (Marshall, J., dissenting) ("The question whether a plaintiff has stated a claim turns not on whether he has asked for the proper remedy but whether he is entitled to any remedy." (alterations incorporated) (internal quotation marks omitted)).

The unfair competition claims survive the motion.

### V.    CONCLUSION

The Court denies the motion in its entirety. Defendant shall file an answer within 14 days of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**